STATE of Missouri, Respondent,

v.

Daniel WHITE, Appellant.

No. ED 87951.

Missouri Court of Appeals,
Eastern District,
Division One.

April 17, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 7, 2007.

Timothy Forneris, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Jefferson City, MO, for respondent.

Before CLIFFORD H. AHRENS, P.J., MARY K. HOFF, J., and NAJNNETJTE A. BAKER, J.

PER CURIAM.

### Introduction

Daniel White ("Defendant") appeals from a conviction for knowingly exposing another person to HIV.[1] He claims three points on appeal. First, Defendant claims the trial court plainly erred in submitting Jury Instructions Five and Six patterned after MAI–CR 332.80. Second, Defendant alleges that the trial court plainly erred in allowing the prosecutor to improperly argue that the jurors imagine what it was like for a nineteen year old woman to find out she was HIV positive and had been exposed unknowingly by a man she loved.

Third, Defendant contends that the trial court plainly erred in allowing the prosecutor to elicit Defendant's testimony during cross-examination about the range of punishment he faced on his prior convictions had he not pled guilty. We find no error and affirm.

### Factual and Procedural Background

Defendant was convicted in a jury trial of one count of knowingly exposing another to HIV under Section 191.677.[2] Defendant met Isia Douglas ("Douglas") in June 2002, after his release from prison. They became sexually involved during that summer. They used condoms sometimes but not always. At the end of July 2002, Douglas was present when Defendant argued with his former girlfriend, Paulette Adams ("Adams"). Adams told Defendant that she had AIDS and mentioned that they were sexually intimate just days earlier. After hearing this argument, Douglas asked Defendant if he had HIV but he told her he did not.

Douglas and Defendant broke up in August 2002. After their break up, Douglas had sex with three other partners, both protected and unprotected. In December 2002, Douglas found out that she was HIV positive, or infected with the HIV virus. Douglas informed Defendant and told him he should get tested.

In January 2003, Douglas met with Detective Brenda Turner ("Detective Turner") in the sex crimes unit of the St. Louis City Police Department. Douglas told Detective Turner that she had tested positive for HIV and gave Defendant's name as the individual who had likely exposed her to the virus. Detective Turner investigated and determined that Defen-

---

1. HIV is the human immunodeficiency virus.

2. All statutory references are to RSMo.2000, unless otherwise indicated.

dant had tested positive for HIV as of 1997.

### Standard of Review for Plain Error

■ Rule 30.20 [3] provides, in pertinent part, that plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted. The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Barnaby*, 91 S.W.3d 221, 224 (Mo.App. W.D. 2002). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *Id.* at 224–225. "Plain" error for purposes of Rule 30.20 is error that is evident, obvious and clear. *Id.* at 225.

■ Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved. *State v. Campbell*, 122 S.W.3d 736, 739 (Mo.App. S.D.2004). A request for plain error review triggers the commencement of a two-step analysis by an appellate court. *Id.* at 740. The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial grounds are found to exist, the appellate court should then move to the second step of this analysis and engage in plain error review to determine whether manifest injustice or a miscarriage of jus-

tice has actually occurred. *Id.* If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.*

### Jury Instructions

■ In his first point, Defendant claims that the trial court plainly erred in submitting Jury Instructions Five and Six to the jury. Specifically, he alleges that the instructions shifted the burden of proof from the State to Defendant because the instructions relied on Section 191.677. Defendant contends that Section 191.677 is unconstitutional.

Section 191.677 reads, in relevant part:

1. It shall be unlawful for any individual knowingly infected with HIV to:

(2) Act in a reckless manner by exposing another person to HIV without the knowledge and consent of that person to be exposed to HIV,

(a) Through contact with blood, semen or vaginal fluid in the course of oral, anal or vaginal sexual intercourse; or

(b)By the sharing of needles; or

. . .

Evidence that a person has acted recklessly in creating a risk of infecting another individual with HIV shall include, but is not limited to, the following:

a. The HIV-infected person knew of such infection before engaging in sexual activity with another person, sharing needles with another person, and such other person is unaware of the HIV-infected person's condition or does not consent to contact with blood, semen or vaginal fluid in the course of sexual activity, or by the sharing of needles.

---

**3.** All rule references are to Mo. Rules Crim. P.2004, unless otherwise indicated.

. . .

2. Violation of the provisions of subsection 1 of this section is a class D felony.

Since we are reviewing under the plain error standard, we must first determine whether there are facially substantial grounds to believe that a manifest injustice or miscarriage of justice has occurred. During the trial, Douglas testified that Defendant did not inform her that he was infected with HIV before they engaged in consensual sexual intercourse. She also testified that Defendant denied having HIV when she asked him about it on more than one occasion during their brief relationship. Defendant testified that he did inform Douglas that he was HIV positive before they engaged in sexual intercourse.

Detective Richard Noble ("Detective Noble"), a detective with the St. Louis Metropolitan Police Department Sex Crimes Unit, testified that he took Defendant into custody on October 28, 2003 in connection with the crime. After advising Defendant of his *Miranda*[4] rights twice, Detective Noble questioned Defendant about his sexual activities with Douglas. Detective Noble testified that Defendant gave a statement "that prior to engaging in any sort of sexual relationship with [Douglas] he told her of his HIV status and she informed him that she was okay with that as long as when they had sex he wore a condom."

When Detective Noble asked Defendant why Douglas would have filed the complaint against him if she knew of Defendant's HIV status, Defendant brought up the argument with Adams at which Douglas was present. Defendant told Detective Noble that after the argument, Douglas asked him about his HIV status and he confirmed that he was positive for the virus. Detective Noble then testified that he asked Defendant why he would tell Douglas of his HIV positive status after the argument with Adams if Defendant had previously told her before they engaged in sexual intercourse. At that point Defendant asked for a lawyer and the questioning stopped.

In order to find Defendant guilty, the jury would have to believe: 1) that he knew he was infected with HIV before he engaged in sexual relations with Douglas; 2) that he did not inform Douglas that he was infected with HIV before engaging in sexual intercourse with her and 3) that as a result, Douglas was exposed to HIV without her consent. See Section 191.677. The credibility of each of the witnesses is a question of fact for the jury. Even if the jury instruction on the use of condoms was not given to the jury, there was sufficient evidence for it to find Defendant guilty of the crime of knowingly exposing another to HIV. Therefore, we do not find facially substantial grounds to believe that a manifest injustice or miscarriage of justice has occurred and we decline Defendant's request for plain error review on this point.

### Closing Argument

■ In his second point, Defendant alleges that the trial court plainly erred in allowing the prosecutor to improperly argue to the jurors that they should imagine what it was like for Douglas to find out she was HIV positive and that they should not let the criminal justice system victimize her again. Defendant argues that these statements improperly personalized the prosecutor's argument and had a decisive effect on the jury that rises to manifest injustice and a miscarriage of justice.

■ The standard of review for alleged error in closing argument depends upon whether defense counsel objects.

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*State v. Shurn,* 866 S.W.2d 447, 460 (Mo. banc.1993), *cert. denied* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Where defense counsel objects, appellate courts will reverse the trial court's decision with regard to closing argument only upon a showing of abuse of discretion by the trial court. *Id.* However, plain error review mandates reversal only if the error results in manifest injustice. *Id.* Plain error review also requires that the argument have a decisive effect on the jury's determination. *Id.* Appellate courts of this state rarely grant relief on assertions of plain error as to closing argument ... because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Crawford,* 904 S.W.2d 402, 407 (Mo.App. E.D. 1995). Because trial strategy looms as an important consideration in any trial, assertions of plain error concerning matters contained in closing argument are generally denied without explication. *Id.*

▮▮▮▮ The trial court is in the best position to appraise the consequence of a closing argument, and has broad discretion to determine if the particular line of argument is proper. *State v. Blakeburn,* 859 S.W.2d 170, 174 (Mo.App. W.D.1993). Misstatements of the law are impermissible during closing argument, and a positive and absolute duty rests upon the trial judge to restrain such arguments. *Id.* However, it is equally recognized that the permissible field of argument is broad, and so long as counsel does not go beyond the evidence and issues drawn by the instructions or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments. *Id.* In ruling on the propriety of the closing argument, the challenged comment must be interpreted in light of the entire record rather than in isolation. *Id.*

▮▮▮▮ A claim of plain error alleging errors committed in closing arguments does not justify relief on appeal unless determined to have a decisive effect on the jury. *State v. Brooks,* 158 S.W.3d 841, 853 (Mo.App. E.D.2005). A prosecutor's statement has a decisive effect if there is "a reasonable probability that the verdict would have been different had the error not been committed." *Id.* In determining whether reversal is required, the court can consider whether the effect of "multiple errors" in the prosecutor's argument was "cumulative and egregiously prejudicial." *Id.* Trial judges are not expected to assist counsel in trying cases, and trial judges should act *sua sponte* only in exceptional circumstances. *Id.*

In the case before us, Defendant made no challenge to the prosecutor's remarks and did not raise the issue in his motion for new trial. There was sufficient evidence for the jury to find Defendant guilty without these comments. The jury believed Douglas' testimony that Defendant did not tell her he was HIV positive before initiating a sexual relationship with her. Additionally, it heard Detective Noble's testimony of Defendant's account of the argument with Adams. Defendant gave testimony that conflicted with that of the other witnesses when he testified that he told Douglas of his HIV positive status before engaging in sexual intercourse with her.

This court will not second-guess whom the jury chooses to believe, as we leave issues of credibility and the weight to be afforded conflicting evidence to the jury. *Davolt v. Highland,* 119 S.W.3d 118, 127 (Mo.App. W.D.2003). Such issues as the weight of the evidence, credibility of the witnesses and resolution of conflicts in the testimony are matters for the jury, not

matters for appellate review. *Miller v. Gillespie,* 853 S.W.2d 342, 344 (Mo.App. E.D.1993). Defendant fails to show a reasonable probability that the verdict would have been different absent these remarks. This point is denied.

### Cross Examination

In his third point on appeal, Defendant claims that the trial court plainly erred in permitting the prosecutor to elicit his testimony on cross-examination about the range of punishment for his prior convictions. Defendant also contends that the trial court plainly erred in allowing the prosecutor during its rebuttal closing to argue that Defendant had gotten a "sweet deal" when he pleaded guilty to second-degree murder in March 1992 and was sentenced to only twelve years.

■■■ It is permissible on cross-examination for the State to elicit the nature, date, and place of each prior crime and the resulting sentence. *State v. Stewart,* 997 S.W.2d 36, 40 (Mo.App. W.D.1999). When an accused elects to testify on his own behalf, the prosecution is permitted to cross-examination upon prior convictions. *State v. Comstock,* 647 S.W.2d 163, 165 (Mo.App. W.D.1983). Defendant relies on *State v. Newman* for the proposition that it is reversible error where the prosecutor's questions about the length of a defendant's sentence are accompanied by additional questions beyond the scope. 568 S.W.2d 276 (Mo.App. 1978).

However, the facts in *Newman* are distinguishable from the facts in the case at hand. In *Newman,* the prosecutor's questions were accompanied by questions about parole violations and details of the crime. *Id.* at 280–281. Also in *Newman,* the defendant's counsel raised objections to the prosecutor's questions. In the case before us, the prosecutor asked about the possible range of punishments for Defendant's pri-

or convictions before he pled guilty. Defendant's own counsel inquired, on direct examination, about the length of time Defendant actually served on his sentences. With no objection to the prosecutor's questions, the standard of review for this court is for plain error only. We cannot say that this rises to manifest injustice.

■■■ Defendant also contends that the prosecutor's remark during closing argument that he got a "sweet deal" by pleading guilty was plain error. Because trial strategy looms as an important consideration in any trial, assertions of plain error *concerning matters contained in closing argument are generally denied without explication. Crawford,* 904 S.W.2d at 407.

The prosecutor's comment that Defendant got a sweet deal was made during the rebuttal portion of her closing argument. It was made in response to Defendant's counsel's attempts to portray Defendant as honest and open because he voluntarily disclosed his prior conviction for murder. The prosecutor did not argue that the jury should punish Defendant in this trial for his prior crimes. Taken in context, the prosecutor argued that Defendant was not credible in his testimony. That one remark did not have a decisive effect on the jury. This point is denied.

### Resentencing

■■■ We address one last issue. In its response to Defendant's first point, the State concedes that Defendant was sentenced under the incorrect version of Section 191.677. Under the 2000 version of Section 191.677, the crime of exposing another person to HIV is a Class D felony, punishable by a maximum of five years' imprisonment. Defendant was sentenced to eight years' imprisonment for a Class B felony under the 2002 version of Section 191.677. The statute changed effective

August 28, 2002. "An ex post facto law is one which proscribes an act criminal not so proscribed when committed or one which enlarges the penalty after the violation." *State v. Jackson*, 896 S.W.2d 77, 83 (Mo. App. W.D.1995). Changes in the law which increase the punishment ... are subject to ex post facto prohibition. *Id.*

The evidence does not establish that Defendant engaged in sexual intercourse with Douglas after August 28, 2002 when the statute changed. Therefore, we remand to the trial court for Defendant to be sentenced for a Class D felony under the 2000 version of Section 191.677.

In all other respects, the judgment is affirmed.