**STATE of Missouri, Respondent,**

v.

**Timothy P. WALKER, Appellant.**

**No. ED 93225.**

Missouri Court of Appeals,
Eastern District.

Dec. 7, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 2011.

124

Richard H. Sindel, Clayton, MO, for Appellant.

Chris Koster, Terrence M. Messonnier, Jefferson City, MO, for Respondent.

ROY L. RICHTER, Chief Judge.

Timothy Walker ("Defendant") appeals from the trial court's judgment and sentence after a jury found him guilty of involuntary manslaughter. We affirm.

## I. BACKGROUND

On April 13, 2007 around 12:30 a.m., Donald Gaither ("Gaither") was traveling westbound on Interstate 70 when he was struck and killed by a Corvette near the Blanchette Bridge. Witnesses saw the Corvette strike Gaither's motorcycle and estimated the Corvette's speed at over 100 mph. There were two occupants in the Corvette, Defendant remained at the scene. The other occupant fled the area, but was apprehended by law enforcement a short time after the crash. That individual had a blood smear on his neck; no blood was observed on Defendant. A dark spot was visible on the driver side airbag in the Corvette. The spot was not tested to determine whether or not it was blood. Other motorists were in the area, but none of them saw who was driving the Corvette. Officer Dennis Navies ("Officer Navies") of the St. Louis County Police Department was the first officer on the scene. He and a motorist at the scene observed Defendant get out of the driver's seat of the Corvette. Officer Navies observed that Defendant's legs were wobbly and that he appeared to be about to fall over. Defendant told Officer Navies that he had hit something, but he did not know what. Defendant also complained of seatbelt injuries. Officer Navies could smell alcohol on Defendant's breath. Defendant told Officer Navies that he had some beer earlier in the night. Officer Navies also observed that Defendant's eyes were glassy and his pupils were dilated.

When Trooper David Dengis ("Trooper Dengis") of the Missouri Highway Patrol arrived, Officer Navies walked Defendant over to him and told Trooper Dengis that he believed Defendant was intoxicated. Defendant approached Trooper Dengis and Trooper Dengis noticed that Defendant was swaying and stumbling, that Defendant's eyes were glassy and bloodshot, and that Defendant's speech was slurred and confused. Trooper Dengis also smelled a strong odor of intoxicants. A second trooper on the scene, Trooper Matthew Schmidt, made similar observations. When Trooper Dengis asked for Defendant's identification, Defendant stated that he left it at a bar. Defendant further stated that he had consumed four or five beers and a shot.

Officer Dean Meyer ("Officer Meyer") of the St. Charles Police Department arrived at the scene of the accident and was asked by Trooper Dengis to watch Defendant. Defendant told Officer Meyer that he had been traveling the speed limit and that the motorcycle cut in front of him. Defendant

further stated that he had been out drinking, but did not feel intoxicated. Defendant originally stated that he did not need medical treatment, but eventually asked to go to the hospital. Officer Meyer followed the ambulance to the hospital, and waited outside Defendant's room at the nurses' station.

Trooper Dengis arrived at the hospital a short time later, administered a horizontal gaze nystagmus test, and observed indicators of intoxication in each of the six clues. Based on Defendant's performance on the test and his appearance at the scene of the crash, Trooper Dengis read Defendant his Miranda Rights, and placed him under arrest for driving while intoxicated. Trooper Dengis then asked Defendant questions from the alcohol influence report. Defendant stated that he had not consumed alcohol since the accident. Defendant also stated that he was the driver of the Corvette. Further, Defendant stated that he had started drinking at 7:30 p.m., had stopped at 11:00 p.m., and during that time he had consumed four beers and a shot. Defendant also admitted to having used marijuana within the 72 hours prior to the accident, although he would not specify when. Trooper Dengis informed Defendant of his rights under the implied consent law, and Defendant refused to provide a blood sample.

At 3:43 a.m., a search warrant for Defendant's blood and urine was issued and Trooper Dengis served Defendant with the warrant at 4:30 a.m. Defendant stated the warrant was invalid due to his birthday being incorrect on the warrant by one day. Defendant continued to object to the warrant, but submitted after he was informed he would be restrained if necessary to execute the warrant. Based on the blood samples drawn, Defendant's blood alcohol level ("BAC") was between 0.148 and 0.188 at the time of the accident. Further, the blood and urine samples showed the presence of cocaine in Defendant's system.

Days later, a search warrant was obtained for the System Diagnostic Module ("SDM") from Defendant's Corvette. The SDM showed that five seconds before impact, Defendant was accelerating from 109 mph to, ultimately, 118 mph three seconds before impact. The SDM showed that Defendant began braking two seconds before impact and that one second prior to impact the Corvette was still traveling at 108 mph. In addition, the SDM indicated that the driver's seatbelt was not fastened. No Sheriff's Deputies participated in the execution of either search warrant.

Defendant was charged by an Amended Information with involuntary manslaughter in the first degree. At trial, Defendant's argument was that he was not the driver. The jury returned a verdict finding Defendant guilty and he was sentenced to 15 years in prison. Defendant appeals.

## II. DISCUSSION

In Defendant's first point on appeal he argues that the trial court erred when it denied Defendant's motion to quash the search warrants and when it allowed the search and seizure of (1) the Defendant's blood and urine samples, and (2) the SDM in Defendant's vehicle. Further, the Defendant argues the trial court erred when it allowed evidence of the data and information resulting from the seizures because the actual searches violated Section 43.200 RSMo 2000 and Section 542.286.2 RSMo Supp 2002. We disagree.

On review of a decision relating to a motion to suppress, this Court reviews the evidence from the motion to suppress in the light most favorable to the trial court's decision and defers to the trial court on credibility findings. *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

This Court considers both the evidence presented at the suppression hearing and at the trial. *Id.* The decision of the trial court is to be reversed only if it is clearly erroneous. *Id.* Additionally, when a warrant is issued, great deference is given to the initial determination of probable cause by the judge who issued the warrant. *State v. Baker*, 103 S.W.3d 711, 720 (Mo. banc 2003). However, questions of law are reviewed de novo. *State v. Nylon*, 311 S.W.3d 869, 884 (Mo.App. E.D.2010).

At the time of this offense, Section 43.200 read:

> "The members of the highway patrol may request that the prosecuting or circuit attorney apply for, and members of the highway patrol may serve, search warrants anywhere within the state of Missouri, provided that the sheriff of the county in which the warrant is to be served, or his designee, shall be notified upon application ... of the search warrant. The sheriff or his designee shall participate in serving the search warrant."[1]

Section 542.286.2 states:

> 1. A warrant to search a person or any movable thing may be executed in any part of the state where the person or thing is found if, subsequent to the filing of the application, the person or thing moves or is taken out of the territorial jurisdiction of the judge issuing the warrant.
>
> 2. All other search warrants shall be executed within the territorial jurisdiction of the court out of which the warrant issued and within the territorial jurisdiction of the officer executing the warrant.

Defendant argues that under these two statutes the warrants were illegally executed because a St. Charles County sheriff was neither notified, nor participated during the execution of these warrants and, therefore the SDM data and the blood and urine samples should have been excluded.

First, we find no connection between Section 43.200 and Section 542.286. Section 542.286 addresses the territorial jurisdiction of the judge, the court and the officer serving the warrant. Section 43.200 clearly authorizes the Highway Patrol to request that a prosecutor apply for a search warrant and that a member of the Highway Patrol may serve a search warrant anywhere within the State. Section 43.200 as it existed at the time of this incident provided that in all instances the Sheriff is to be notified of the application for a search warrant, but is silent as to who must make that notification—the issuing Judge? The prosecutor? Or the member of the Highway Patrol requesting the application? The Section requires that the local Sheriff or his/her designee participate in the execution of the warrant, but provides no sanction for a failure to notify the Sheriff of the application or the lack of participation by the Sheriff or his/her designee.

Further, Section 43.200 does not state what results will follow if in the event of a failure to comply with its terms. Even when a statute contains the word "shall," as 43.200 does, when the statute does not state what results will follow in the event of a failure to comply with its terms, the statute is directory, and not mandatory. *State v. Tisius*, 92 S.W.3d 751, 770 (Mo. banc 2002). When a statute is

---

1. We note that the statute has since been amended to create an exception to this requirement of participation in service of the warrant only "for offenses pertaining to driving while intoxicated and the investigation of motor vehicle traffic accidents." Missouri House Bill 685, Ninety-fifth General Assembly (2009).

deemed to be directory and a court does not follow it, the defendant must show that he or she has been prejudiced or that his or her interests have been adversely affected by such failure. *State v. Murray*, 744 S.W.2d 762, 771 (Mo. banc 1988). We find that no such prejudice exists.

Therefore, we decline to rule that the failure to have a member of the Sheriff's Department or a designee participate in the service of a search warrant constitutes "illegal execution" of the warrant entitling a Defendant to exclusion of evidence. Point denied.

■ In Defendant's second point on appeal, he argues that the trial court erred in allowing the state to elicit testimony regarding Defendant's alleged lack of remorse and his demeanor toward the victim, because such evidence was irrelevant and prejudicial. We disagree.

■ Because this issue was not properly preserved for appellate review, this court may only review Defendant's claim for plain error.[2] A request for plain error review involves a two-step analysis. *State v. White*, 247 S.W.3d 557, 561 (Mo.App. E.D.2007). The first step requires this court to determine whether the asserted claim of plain error "facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred." *Id.* If such grounds exist, then the court should proceed to step two and engage in plain error review in order to determine whether manifest injustice or a miscarriage of justice has actually occurred. *Id.* If step one is not satisfied, the appellate court should decline to exercise its discretion to review the claim for plain error. *Id.* We find that are no grounds for

believing a manifest injustice or miscarriage of justice has occurred.

Defendant's demeanor toward the victim and his laughing at the hospital tend to show that Defendant was intoxicated and therefore did not react as a sober person might to having just been involved in a fatal crash. The evidence was relevant to the State's case.

■ Further, even if the evidence was prejudicial and therefore erroneously admitted, it was at worst harmless error. *State v. Bynum*, 299 S.W.3d at 61. There was ample evidence, beyond that obtained through the search warrants, that Defendant was both speeding and intoxicated. In addition, Defendant admitted several times to being the driver of the Corvette. With the substantial evidence against Defendant we find that testimony of Defendant's demeanor toward the victim was harmless.

Because the testimony of the Defendant's demeanor toward the victim was relevant to the State's case, and because the evidence would be at worst harmless error, we find that facially no grounds exist for believing that a manifest injustice or a miscarriage of justice has occurred. Therefore, we decline to exercise our plain error review. Point denied.

Defendant has abandoned his third point on appeal based on our Supreme Court's holding in *State v. Seeler*, 316 S.W.3d 920, 924–25 (Mo. banc 2010).

■ In Defendant's final point on appeal, Defendant argues that the trial court erred in denying Defendant's motion for acquittal at the close of evidence because Section 565.024. 1(3)(a) is unconstitutionally vague. This point has not been properly preserved for review on appeal.

---

2. Because Defendant's counsel did not object to this testimony at trial, the issue was not properly preserved for appellate review.

*State v. Johnson*, 237 S.W.3d 277, 282 (Mo. App. E.D.2007).

For issues involving the constitutionality of a statute, to preserve the claim for appeal, the issue must be raised at the trial court at the first opportunity. *State v. Newlon*, 216 S.W.3d 180, 184 (Mo.App. E.D.2007). If the issue is not raised at the trial level, it may not be considered on appeal. *Id.* Having failed to raise this claim at trial, Defendant may not now raise this claim for the first time on appeal. *Id.* Point denied.

## III. CONCLUSION

The judgment of the trial court is affirmed.

GLENN A. NORTON and GARY M. GAERTNER, JR., JJ., concur.