STATE of Missouri, Respondent,

v.

Brandon A. WHITBY, Appellant.

No. ED 96771.

Missouri Court of Appeals, Eastern District, Division One.

April 24, 2012.

Andrew E. Zleit, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., Richard A. Starnes, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

*Introduction*

Brandon Whitby (Appellant) appeals the trial court's judgment of murder in the second degree and felony abuse of a child. Appellant challenges the propriety of the State's closing argument and the sufficiency of the evidence for conviction. We affirm.

*Background*

As of 31 July 2009, Appellant had been living for about a month in an apartment with his girlfriend, Shamecca Brown, and her three children, three-year-old L.R., two-year-old M.D. (Victim), and ten-month-old L.S. The night of 31 July 2009, L.R. was staying at a relative's house, and the two other children, along with Ms. Brown and Appellant, went to sleep in the living room.

The following morning, Ms. Brown woke with considerable pain in her kidneys, and she was experiencing some bleeding. She called her mother, Cora Spaulding, who told her to call an ambulance. Ms. Brown asked her mother to come watch the children, and Ms. Spaulding said she would do so but to have Appellant watch them until she could get there. Ms. Spaulding left her house shortly thereafter. Ms. Brown woke Appellant and asked him to watch the children while she went to the hospital. He agreed, and Ms. Brown called for an ambulance.

Paramedics arrived at 10:55 a.m. Two paramedics entered the apartment to examine Ms. Brown. Both testified that L.S. and Victim were present in the living room and that the paramedics were able to see the children and their faces. Neither paramedic observed anything unusual about the children or saw any visible injuries on them, and both paramedics observed the children to be acting appropriately for their ages. One paramedic recalled that Victim was particularly friendly, and the other paramedic recalled waving to Victim and Victim waving back. The paramedics decided to take Ms. Brown to the hospital, and as they left at 11:10 a.m., one of the paramedics locked the door behind her and checked to ensure it was locked.

While on her way to the apartment, Ms. Spaulding received a call from Appellant, who told her that Victim had a seizure. Ms. Spaulding told him that Victim did not have seizures, and Appellant did not respond. Shortly thereafter, Appellant called Ms. Spaulding again and told her he was going to take Victim to the hospital.

An officer responding to a call "for a sudden death" arrived at the apartment at around 11:30 a.m. to find Victim laying on the floor and paramedics treating him.

The officer, Matthew Burle, observed that Appellant was the only adult present in the apartment other than the paramedics. Officer Burle also observed L.S., noting he was not moving, just staring, and that there were bruises on his face and around his eye. Officer Burle contacted his supervisor, who came to the apartment and who then contacted the child abuse division. An officer from the child abuse division came to the scene, observed the bruises on L.S. and that he was atypically lethargic, and took L.S. to the hospital.

At the hospital, doctors were unable to resuscitate Victim when he arrived with paramedics. After his death, officials brought Ms. Brown to identify Victim, and she testified that Victim had a long scar across his face that had not been there when she last saw him at the apartment.

Both Victim's treating doctor and the pathologist who performed Victim's autopsy testified. These doctors observed various bruises all over Victim's body, including a pattern of rounded, loop-like bruises.[1] There was testimony that these bruises were inflicted within 24 hours of Victim's death. Additionally, Victim had internal injuries including a skull fracture, bleeding in the front of his head, brain swelling, hemorrhaging in his retina and thymus, and ruptured blood vessels on the surface of his heart and where his lungs connected to his windpipe. The pathologist concluded Victim's injuries were the result of blunt force trauma, and were not the result of an accidental fall but were inflicted at the hands of another. The pathologist determined these injuries were inflicted within four hours of

his death, and that Victim would have experienced an altered consciousness or a lack of consciousness almost immediately upon the infliction of his brain injuries. She stated he would not have been able to interact with other people, smile or wave after his injuries were inflicted.

Police searched the apartment later that day, and they found a gun inside a toy car, ammunition and heroin under the mattress of the bed Appellant was laying in when paramedics first arrived, and a duffel bag full of drug paraphernalia. Police also found a cord from a video game system on top of some trash bags outside the back door of the apartment. The pathologist who testified had compared the cord in evidence to Victim's contusions and stated they were consistent with the shape of the cord.

The jury found Appellant guilty of murder in the second degree and of felony child abuse of Victim.[2] The court sentenced Appellant to consecutive prison terms of life and seven years, respectively. This appeal follows.

### Discussion

#### Point I

Appellant argues that the trial court abused its discretion in overruling his counsel's objection to the State's closing argument, after the prosecutor said "[Victim] . . . ran, tried to flee for his life." Appellant also argues the prosecutor made impermissible *ad hominem* attacks on Appellant by saying, "that man hunted him like an animal, chasing him and striking

---

1. The same doctor who treated Victim also treated L.S. upon his arrival at the hospital. This doctor also testified about the extent of L.S.'s injuries, including that L.S. had a similar pattern of bruising.

2. Appellant was also charged with four counts of endangering the welfare of a child by the presence of the gun, heroin, and drug paraphernalia; one count of felony child abuse of L.S.; and one count of felony assault of L.S. The jury found Appellant not guilty of these charges.

him as he ran," and by characterizing the man who inflicted Victim's injuries as a "monster." The State argues this latter argument by Appellant is unpreserved. The State further argues that the trial court neither abused its discretion nor plainly erred in allowing all of these statements by the prosecutor during closing argument. We agree.

### Preservation

■ On appeal, a defendant will be "held to the specific objections presented to the trial court." *State v. Baker*, 23 S.W.3d 702, 713 (Mo.App. E.D.2000). We review any additions or broadening of those specific objections only for plain error. *Id.*

Here, the prosecutor's closing argument included the following:

> He just kept beating him. Look at that, look at those photos. Relentlessly, strike after strike. And then he also beat [L.S.]. Again showing no mercy, no mercy for [L.S.]'s tender age of nine-months-old. That's how [Victim] spent the last few moments of his life, alone at the hands of a monster. [L.S.], in less than one year on our Earth, we couldn't protect him from that monster who showed no mercy for one of our kids.... How do we know it was the defendant that was the monster in the apartment that night? Because Dr. Sandomirsky testified and told us it was and science doesn't lie.
>
> DEFENSE: Objection. That was not the evidence. Testimony that [Appellant] caused those injuries was not testified to by the doctors.
>
> THE COURT: You can rephrase that.

Later, the prosecutor went on to argue how Victim's injuries were inflicted:

> And he hits him again ... strikes out with the amount of force on [Victim]'s body consistent with being in a car acci-

dent. And he did it again and again and again with absolutely no mercy. You can't even count the number of strikes on those pictures, they overlap.... And they're on different parts of his body, which means one of two things, [Victim] was either rolling in pain on the floor as he struck over and over and over again or [Victim], mobile enough to get up ran, tried to flee for his life—

> DEFENSE: Objection, Your Honor. There's no evidence of either of those facts.
>
> THE COURT: She's arguing inference. Overruled....
>
> STATE: Running for his life, his two-year-old life. And that man hunted him like an animal, chasing him and striking him as he ran, because they're on his stomach, they're on the front of his face, they're on his back, they're on his neck, they're down his back and on his buttocks. With every strike he made a decision, I'm going to kill this inconvenience.... And then, ... when that didn't work ... [h]e made a decision to say this isn't getting the result I want, I'm setting down this cord and I'm going to another method.
>
> And ... we won't be able to say exactly what that method is.... But we know the amount of force it took.... A blow so forceful like he was in a car accident, a moving vehicle.
>
> And he didn't strike him once and he didn't strike him in the same spot over and over. He struck him to the front of his head, to the side of his head, to the back of his head. Or instead of turning [Victim] around ... he picked him up and threw him.
>
> DEFENSE: Objection, Your Honor. There is no evidence of any of this.
>
> THE COURT: I think all she's arguing is just inferences.... You obviously

have the right to argue counter-inferences....

DEFENSE: But the car accident, too?
THE COURT: ... even the doctor testified like a car accident.... The objection is overruled.

Defense counsel did not object either to the term, "monster," or to the phrase "hunted him like an animal." Defense objected to the prosecutor's posing of specific ways the wounds found on Victim were inflicted. Similarly, Appellant's motion for new trial included only a statement that the trial court erred in overruling his counsel's objection to the statements that "[Victim] was running for his life" and that "[Appellant] picked [Victim] up and threw him." Therefore, Appellant's argument that the prosecutor made impermissible *ad hominem* attacks during closing is unpreserved.

### Standard of Review

Regarding Appellant's preserved objection, this Court will not disturb a trial court's ruling during closing argument absent an abuse of discretion. *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006). We will reverse here only if the trial court's ruling resulted in prejudice to Appellant, in that a reasonable probability exists that the verdict would have been different had the error not been committed. *State v. Johns*, 34 S.W.3d 93, 116 (Mo. banc 2000).

As for Appellant's argument that the prosecutor made *ad hominem* attacks through her use of the term "monster" and the phrase "hunted him like an animal," we turn to Rule 30.20[3] authorizing review of plain errors committed by the trial court. Under this rule, plain error is error which is "evident, obvious, and clear." *State v. White*, 247 S.W.3d 557, 561 (Mo.

App. E.D.2007). We first determine whether a claim on its face establishes substantial grounds to believe the trial court committed such an error, resulting in manifest injustice or a miscarriage of justice. *Id.* If so, we exercise review "to determine whether manifest injustice or a miscarriage of justice has actually occurred." *Id.* Here, in order to show that the trial court committed plain error by allowing the prosecutor's remarks made without objection during closing, Appellant must show that these statements "had a decisive impact on the outcome of the trial." *State v. Dorsey*, 318 S.W.3d 648, 655 (Mo. banc 2010).

### Analysis

During closing argument, counsel is permitted to draw reasonable inferences from the evidence presented. *State v. Clemons*, 946 S.W.2d 206, 229 (Mo. banc 1997). Prosecutors are also permitted to express their own opinions regarding the defendant's guilt based on the evidence. *Id.* While a prosecutor goes too far when he or she strays beyond the evidence or makes *ad hominem* attacks in order to inflame the jury, *State v. Rasheed*, 340 S.W.3d 280, 286 (Mo.App. E.D.2011) (citing cases), not every impermissible remark will result in prejudice requiring reversal. *State v. Munoz*, 678 S.W.2d 834, 835 (Mo.App. E.D. 1984).

■ First, the trial court concluded that the State's remarks concerning whether Victim was rolling on the ground or running away as he was being beaten were reasonable inferences from the evidence. The prosecutor noted the placement of the bruises and abrasions on Victim. She concluded that the bruises on Victim's back, neck and buttocks indicated he could have been running away as he was beaten; or

---

**3.** All rule references are to Mo. R.Crim. P.     (2011), unless otherwise indicated.

the fact that Victim had bruises all over his body meant he had been rolling around on the floor while being beaten. The trial court did not abuse its discretion in concluding that these were reasonable inferences to be made from the evidence the jury saw of Victim's bruises.

■ Next, calling a defendant a "monster" or implying a defendant "hunted" a child "like an animal" can be considered improper *ad hominem* attacks. However, courts have also found that such remarks do not always require reversal. *Munoz*, 678 S.W.2d at 835 (finding no plain error when defendant called "monster" during State's closing; citing cases in which defendants called names such as "young punk," "lying thief," "desperado," "hoodlum," "drunken killer," and "pimp," yet convictions affirmed). This is especially true where the evidence supports such a characterization. *Id.*, *State v. Owsley*, 959 S.W.2d 789, 797 (Mo. banc 1997).

Here, the prosecutor tied her analogy of Appellant hunting Victim "like an animal" to her inference that Victim was running away from his attacker. She used the term "monster" to refer to whoever committed these acts against Victim and his young brother. She then attempted to demonstrate why the evidence showed Appellant was "that monster." Notably, while the prosecutor also used the term "monster" to describe what happened to L.S., and connected that term to Appellant, the jury acquitted Appellant of all charges for which L.S. was the victim. After reviewing the entire context of the State's argument along with the evidence presented, we cannot see that these comments so inflamed the jury as to have had a decisive effect on the verdict, or that Appellant suffered manifest injustice or a miscarriage of justice by the trial court's allowance of the State's closing argument. Rule 30.20; *see Munoz*, 678 S.W.2d at 836

(statements viewed in context of entire closing argument).

The trial court neither abused its discretion nor plainly erred in its handling of the State's closing argument. Point denied.

### Point II

■ Appellant challenges the sufficiency of the evidence to support his convictions. Specifically, he argues the jury could not have found beyond a reasonable doubt that Appellant, rather than someone else, committed these crimes. We disagree.

### Standard of Review

Appellate review of a claim of insufficient evidence supporting a criminal conviction "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. Banc 1989)). We give great deference to the trier of fact, accepting as true all evidence and reasonable inferences favorable to the State, and disregarding all evidence and inferences to the contrary. *Id.*

### Analysis

Appellant does not dispute whether these crimes took place, but rather argues the jury could not have found beyond a reasonable doubt that he was the one who caused the abuse and death of Victim, rather than Ms. Brown or some other person. We disagree.

The jury heard evidence that when Ms. Brown was present in the apartment with the paramedics, Victim was interacting with them and had no visible injuries. The jury heard testimony that Victim would not have been able to interact or wave after receiving his injuries, thus they could

have reasonably inferred that Victim had not suffered these injuries leading to his death until after Ms. Brown left with paramedics. The jury also heard evidence that the door was locked when the paramedics and Ms. Brown left, and that approximately 20 minutes later the second set of paramedics arrived. Officer Burle testified that the only adult present with the children and the second set of paramedics was Appellant. The jury could reasonably have inferred from these facts, and from the lack of any testimony to the contrary, that no one else would have been able to enter the apartment in those 20 minutes between the times the paramedics were there. The jury heard evidence that the children could not have inflicted these injuries upon each other, and that these injuries were not the result of an accident. All of this was sufficient circumstantial evidence for a jury to infer beyond a reasonable doubt that Appellant was the only one who could have inflicted Victim's injuries leading to his death. Point denied.

### Conclusion

The trial court did not abuse its discretion or plainly err in allowing the State's closing argument. There was sufficient evidence by which a reasonable trier of fact could have found Appellant caused Victim's injuries and his death. We affirm.

CLIFFORD H. AHRENS, P.J. and ROY L. RICHTER, J., concur.