

# Missouri Court of Appeals
## Southern District
### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD34769 |
| | ) | |
| CHARLES L. WHITE, | ) | Filed April 4, 2019 |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF WAYNE COUNTY

Honorable Kelly Wayne Parker

AFFIRMED

Following a jury trial and his convictions on the class A felony of assault in the first degree, *see* section 565.050, and the class B felony of burglary in the first degree, *see* section 569.160, Charles L. White ("Defendant") appeals, raising two claims of trial court error.[1] Defendant first contends that section 569.160 is facially ambiguous and that, resolving the ambiguity in favor of Defendant, the evidence was insufficient to convict him of first-degree burglary. Second, he contends that the trial court plainly erred in failing to *sua sponte* declare a mistrial for what Defendant alleges was the prosecutor's direct reference to Defendant's failure to testify. Finding no merit in either claim, we affirm.

---

[1] All statutory references are to RSMo Cum.Supp. 2006.

1

## Factual and Procedural Background

Upon review, appellate courts consider the facts and all reasonable inferences derived therefrom in a light most favorable to the guilty finding, disregarding all contrary evidence and inferences. *State v. Bewley*, 68 S.W.3d 613, 617 (Mo.App. 2002). From this perspective, the facts and inferences supporting Defendant's convictions are summarized as follows.

On January 18, 2013, Clyde Mitchell, who lived alone at 47 North Herron Street in Ellsinore, was watching television when he heard a knock at his front door. Mitchell turned on the floodlights outside and looked through a curtain and saw a "big, tall figure in full camo[,]" wearing a mask and a cap. Fearing for his life, Mitchell ran to get his pistol, which was nearby, at about the time that his front door was kicked in, shattering the door jamb. As Mitchell tried to ready the pistol to fire, he was clubbed and thrown into a window, tearing down venetian blinds and breaking nearby furniture as he fell. Mitchell fired his pistol once before he was hit in the head three times – once in the forehead, once over his eye, and once again in his jaw. Mitchell fired two more shots inside the house, and by the time he was able to get up, the assailant was gone. Mitchell called 911 on his landline, and after emergency medical personnel arrived, he was transported to a Poplar Bluff hospital. To responding emergency personnel, Mitchell described his assailant as "a tall, thin man[,]" wearing camouflage and a face mask.

Gerri Flatt, who was a dispatcher at Carter County Sheriff's Department on January 18, 2013, received Mitchell's call for assistance around 6:46 p.m. At 6:51 p.m., she received a call from Larry White requesting assistance for his son, Defendant, at his home on Grand Avenue in Ellsinore, a short distance away from Mitchell's residence. Emergency medical personnel and law enforcement responded to both locations while ambulances were dispatched from Poplar Bluff to assist.

Garth Lawson, an emergency medical technician, arrived at Mitchell's home, where he found the front door open and Mitchell standing at the kitchen sink bleeding profusely from his head. He had lost a lot of blood and sustained serious, life-threatening injuries attributed to blunt trauma, including severe lacerations "down to the bone," a fractured jaw, and fractures of the left maxillary sinus and around the left eye orbit. Mitchell was transferred to St. Louis University Hospital and spent the next three months in a nursing home recovering from his injuries.

Ambulance dispatcher and first responder Beth Asher responded to the White residence and found Defendant outside about ten feet from the back porch, rolling on the ground. Defendant was agitated and holding his right arm. There was a hole through the right sleeve of Defendant's jacket. In order to treat Defendant's wound, which was "through and through" and about three inches above the elbow on the inside of his arm, Asher had to cut off the sleeve of Defendant's jacket. Asher described his jacket as "maybe a camouflage or something zip-up heavy jacket[,]" "[s]omething like camouflage or a Carhart, that thick material." Defendant was still wearing it when she left the scene. Additional officers noted that Defendant wore a camouflage jacket and clothing, including pants.

Defendant told Asher "someone had knocked on his back door, he opened it there was nobody there and he went . . . outside and somebody shot him." Defendant indicated to her that the shot came from behind his trailer. When law enforcement officers asked Defendant how he was shot, Defendant told Deputy Michael Burgin that he thought "a couple of guys over by the shed" had shot him, and he told Sherriff Richard Stephens that he did not see who shot him but "heard a male's voice."

Defendant was transported to the hospital in Poplar Bluff for treatment. Corporal Terry Lee with the highway patrol was sent there to retrieve Defendant's clothing and possibly the

3

bullet. He was also instructed to photograph Defendant's wound. Initially, Lee considered Defendant a victim, but when he explained the purpose of his visit, Defendant became "standoffish and backed up[,]" "kind of withdrew and tensed up and said his lawyer told him not to allow us to take anything without a warrant." Although Lee explained that such evidence would be helpful in any case against Defendant's assailant, Defendant still refused to cooperate. Lee was then instructed to arrest Defendant if he tried to leave, and when Lee returned to arrest Defendant, he violently resisted, hitting and kicking, and began trying to bite Lee. Lee had to call for help, and it took three of them to subdue Defendant. No clothing was retrieved, and Lee was advised that there was no bullet, that it had passed completely through Defendant's arm.

Highway patrol and law enforcement personnel investigated the vicinity in and around Defendant's and Mitchell's residences. Of the three shots fired by Mitchell during the altercation with his attacker, "[t]hree [expended] brass" were seized inside the home and investigators located two of the projectiles that had been fired. Both projectiles were found on the floor and there was no indication that a projectile had been fired in such a manner that it would have traveled beyond the confines of the residence.

At the White residence, blood was found on the back porch step, the back door, and inside in the kitchen area. When investigators were photographing the scene inside Defendant's residence and came upon a coat and boots with what appeared to be blood on the toes in the kitchen area, Defendant's mother and girlfriend became concerned, and the sheriff sent everyone outside and requested a search warrant. After the search warrant was obtained, the investigators returned to the interior of the residence to collect and photograph potential evidence, which included camouflage type boots, a jacket, camouflage turkey mask, camouflage gloves, and a knife.

4

In a field separating the White residence and the Mitchell residence, investigators found blood on some leaves along a wire fence. The blood was analyzed and was determined to contain DNA consistent with the DNA profile of Defendant.

Defendant was charged as a prior and persistent offender with first-degree assault and first-degree burglary. A jury ultimately found Defendant guilty on both counts, and the trial court sentenced him to serve consecutive terms of twenty-five years' imprisonment for first-degree assault and ten years' imprisonment for first-degree burglary. Defendant timely appeals.

## Discussion

### Point 1 – No Ambiguity Shown in Section 569.160

Defendant's first point contends:

> The trial court erred in overruling [Defendant's] motions for directed verdict at the close of [the State's] evidence and at the close of all evidence and entering sentence and judgment for first-degree burglary in derogation of his right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that, where Section 569.160 is facially ambiguous as to the meaning of "not a participant in the crime," the rule of lenity gives that phrase the most favorable construction to [Defendant]; and, while there was evidence both that [Mr.] Mitchell was the victim of an assault on January 13, 2018 within 47 N. Herron Street in Ellsinore and that he was present within that structure during the commission of that assault as a participant, but no evidence that any other non-participant in the crime of assault was present in that structure, there was insufficient evidence on Count II as charged, since [Mr.] Mitchell could not simultaneously be a participant and non-participant in the assault serving as the predicate crime to first-degree burglary.

We disagree.

We begin our analysis with Defendant's threshold premise that section 569.160 is facially ambiguous. As relevant to this premise, the amended felony information charged Defendant with, and he was later found guilty and convicted of, first-degree burglary under section 569.160. More specifically, the charge was that Defendant unlawfully entered Mitchell's residence for

5

"the purpose of committing the crime of assault therein," and that Mitchell, who was present in the structure, "was not a participant in the crime."

Under the provisions of section 569.160, the crime of first-degree burglary requires the existence of any one of three statutorily-enumerated factual situations. Those situations are provided as follows:

> 1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
>
> (1) Is armed with explosives or a deadly weapon or;
>
> (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
>
> (3) There is present in the structure another person who is not a participant in the crime.

Section 569.160. In this case, Defendant's charge involved the third enumerated situation, that "[t]here is present in the structure another person who is *not a participant in the crime*." ***Id.*** (emphasis added).

Defendant's argument is directed toward section 569.160's "not a participant in the crime" language. Defendant argues that the words "a participant" and "the crime" are undefined by this or any other applicable statute. The words "the crime" are unclear, according to Defendant, because they could refer to either the crime of burglary *or* the crime that the burglar "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing . . . therein[,]" such as the assault in this case. In addition, Defendant cites WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1646 (2002), defining "participant" as, "one that participates: one that takes part or shares in something with others[.]" Based upon the foregoing, Defendant contends that

6

> Mitchell was clearly a "participant" where he, albeit unwittingly, necessarily took part and shared in the home entry and assault by the intruder. Thus, to the extent Mitchell was a necessary actor for the assailant's crime of assault to be consummated, he was a "participant in the crime" present in the house at all relevant times.

Thus, Defendant's argument continues, "the jury could either find [Defendant] guilty of first-degree burglary where Mitchell was not a participant in the crime of burglary, but would have to acquit [Defendant] where Mitchell clearly took part and shared in the crime of assault."

"The proper interpretation of a statute is a question of law we review *de novo*." ***State v. Spradling***, 413 S.W.3d 670, 673 (Mo.App. 2013). "The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language." ***State v. Graham***, 204 S.W.3d 655, 656 (Mo. banc 2006). "We particularly look to whether the language is clear and plain to a person of ordinary intelligence." ***State v. Acevedo***, 339 S.W.3d 612, 617 (Mo.App. 2011). "We may not create an ambiguity where the words of a statute are plain." ***State v. Downing***, 359 S.W.3d 69, 71 (Mo.App. 2011). "Statutory construction should be reasonable and logical." ***Id.*** Moreover, while the dictionary is frequently used as a tool in statutory interpretation, a dictionary definition is not the final source of guidance as to a word's plain and ordinary meaning. ***State v. Payne***, 250 S.W.3d 815, 820 (Mo.App. 2008).

For three reasons, we conclude that Defendant's argument is based upon a strained and illogical reading of section 569.160's plain and ordinary language. First, the statute defines, in part, that "[a] person commits *the crime* of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing *a crime* therein[.]" Section 569.160.1 (emphasis added). It is clear and plain to a person of ordinary intelligence that any further reference in the section to "the crime" without any other words of limitation or qualification is a reference to "the crime" defined by

7

that statute and not to "a crime" that may or may not occur after the defined crime is accomplished and completed.

Second, by this section's express terms, a person committing "the crime" of burglary in the first degree need not actually *commit* "a crime" once the burglary is accomplished, he or she need only accomplish the burglary "*for the purpose of* committing a crime[.]" (Emphasis added). It does not matter that, in this case, a crime that was the purpose of the burglary (the assault) was actually committed after the burglary occurred. In that context, a reasonable person of ordinary intelligence would read the words " the crime" in the phrase "a participant in the crime" in section 569.160.1(3) as referring to the only crime that section 569.160 defines, "*the crime* of burglary in the first degree[.]" (Emphasis added).

Third, no reasonable person of ordinary intelligence would read the words "a participant" in the phrase "a participant in the crime" as including the *victim* of a crime. The absurdity of Defendant's argument to the contrary is illustrated by his premise that Mitchell was "a participant" in the assault *but not* "a participant" in the burglary. If, as Defendant argues, "a participant" is "one that takes part in or shares in" a crime, whether as a witting actor, bystander, or victim, Mitchell *would have been* a burglary participant because Mitchell took part in the burglary's statutory requirement of being "present in the structure[.]" *See* section 569.160.1(3). Such a reading would be absurd, however, because, if "the crime" refers to burglary, it would be impossible for a person who is "present in the structure" from ever being "not a participant in the crime[,]" effectively nullifying section 569.160.1(3).

Applying Defendant's same logic to subsection (2) of the burglary statute further illustrates the absurdity of his argument. That subsection *incorporates assault* by requiring that a burglar "[c]auses or threatens immediate physical injury to any person who is not a participant in

the crime[.]" Section 569.160.1(2). Whether the words "the crime" in this subsection refer to burglary or assault is immaterial because, under Defendant's reading, the victim would, in either case, be "a participant[,]" thereby effectively nullifying this subsection as well.

Conversely, to a reasonable person of ordinary intelligence the phrase "a participant in the crime" connotes someone who is engaged in criminal behavior, not someone engaged in lawful behavior, such as a victim. Here, Mitchell was lawfully present in the structure and did not engage in the criminal behavior of committing a burglary. Similarly, Mitchell lawfully exercised his right to self-defense and did not engage in the criminal behavior of committing an assault. Mitchell, therefore, was not "a participant in the crime" in either instance.

Having determined that section 569.160 is clear and unambiguous, the rule of lenity does not apply, *see* **State v. Ondo**, 232 S.W.3d 622, 628 (Mo.App. 2007), and all that remains is to apply the statute's plain and ordinary language. Here, there was no evidence that Mitchell was a participant in the underlying burglary. Because Defendant concedes that the jury could "find [Defendant] guilty of first-degree burglary where Mitchell was not a participant in the crime of burglary," we need not detail here all of the evidence supporting the conviction, and his sufficiency challenge accordingly fails. Point 1 is denied.

### Point 2 – No Plain Error Shown in State's Closing Argument

Defendant's second point contends:

> The trial court plainly erred in failing to *sua sponte* declare a mistrial during the prosecutor's closing argument in derogation of [Defendant's] rights against self-incrimination, to due process of law, and to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 18(a), and 19 of the Missouri Constitution, in that, where the prosecutor said "Well which story is it Mr. Defendant?" during final closing argument, this was a direct comment on [Defendant's] failure to testify mandating a new trial; alternatively, this argument was an indirect comment on [Defendant's] failure to testify obviously intended to poison the minds of the jurors against him and a calculated intent to magnify [Defendant's] decision not to testify so as to call it to the jury's attention, and, where this comment likely had a

decisive effect on the jury where there was thin circumstantial evidence of [Defendant] as the assailant in this case, the manifest prejudice of this comment could only be removed by a mistrial.

Again, we disagree.

Defendant's second point arises out of the following facts. After the State's case-in-chief and outside the presence of the jury, the trial court discussed with Defendant his Fifth Amendment right not to testify, and Defendant ultimately chose to remain silent.

Later, during the State's rebuttal closing argument, the prosecutor made the following statements to the jury:

> The bottom line is this, that man is the only man in Elsinore [sic], which is not a big town, that night wearing full camo who gets shot after Clyde Mitchell shoots an intruder in his home. And this idea that the bullet, this mystery bullet, you heard and saw the diagram. The bullets were fired to the north into the bathroom and there are holes in the house and they are trying to assert it went out of the side and across the field and down the valley and hit? It doesn't fit with his story, because there was, he was sitting in the house and somebody knocked on his door and he walked out on the porch and then he gets shot. And then he tells one group of people I saw two people and then another it's one. *Well which story is it Mr. Defendant?*

(Emphasis added).

Defendant did not object to the aforementioned italicized statement, nor did he allege any error regarding this statement in his motion for a new trial. Defendant concedes that his claim on appeal is not preserved and requests that we review it for plain error under Rule 30.20.

Plain error review involves a two-step analysis. ***State v. Mack***, 301 S.W.3d 90, 95 (Mo.App. 2010). The first step in the analysis is the determination whether the trial court committed plain error, which is evident, obvious, and clear error affecting the defendant's substantial rights. ***Id.*** Our inquiry ends if the defendant does not get past this first step. ***Id.*** If this first step is satisfied, however, the second step is the determination whether the error actually resulted in manifest injustice or a miscarriage of justice. ***Id.***

10

Relief on plain error claims involving closing argument is rarely granted "because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. White*, 247 S.W.3d 557, 563 (Mo.App. 2007). "Because trial strategy looms as an important consideration in any trial, assertions of plain error concerning matters contained in closing argument are generally denied without explication." *Id.*

The State argues, and we agree, that the prosecutor's statement at issue—"Well which story is it Mr. Defendant?"—was a reference to evidence of Defendant's out-of-court versions of events admitted without objection at trial, *not* a reference to Defendant's failure to testify. *Cf. State v. Richardson*, 923 S.W.2d 301, 314 (Mo. banc 1996) (holding that the prosecutor's statement, "Did you hear him [(the defendant)] say from the testimony here, 'I don't think that's such a good idea[,]'" was a proper reference to the evidence and not reference to the defendant's failure to testify); *State v. Futo*, 990 S.W.2d 7, 14–15 (Mo.App. 1999) (holding that prosecutor's statements during closing argument of a murder prosecution that the defendant should "tell us the truth" were not references to the defendant's failure to testify but references to evidence that the defendant told various stories to the police and relatives about the murders). Here, the context of the prosecutor's statement shows that the prosecutor was referring to Defendant's statements, made to first responders and law enforcement, about how he was shot in the arm. Discrepancies could reasonably be inferred between Defendant's various accounts, however, so it was not improper for the prosecutor to so indicate to the jury. *See Futo*, 990 S.W.2d at 15 ("It is perfectly proper and legitimate for a prosecutor to argue the effect of evidence presented, and the reasonable inferences to be drawn therefrom.").

Having found no evident, obvious, and, clear error, the first prong of Defendant's plain error claim fails, and our inquiry ends. *Mack*, 301 S.W.3d at 95. Defendant's second point is denied.

## Decision

The trial court's judgment is affirmed.


GARY W. LYNCH, J. – OPINION AUTHOR

DON E. BURRELL, JR., P.J. – concurs

NANCY STEFFEN RAHMEYER, J. – concurs