**STATE of Missouri, Plaintiff–Respondent,**

v.

**Terry D. CAMPBELL, Defendant–Appellant.**

**No. 25601.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 5, 2004.

Nancy A. McKerrow, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General; Patrick T. Morgan, Assistant Attorney General, Jefferson City, for Respondent.

JEFFREY W. BATES, Judge.

Terry Campbell ("Defendant") was charged by amended information with the class B felony of sale of a controlled substance in violation of § 195.211.[1] After a jury trial, Defendant was convicted of this offense and sentenced by the trial court to a term of 12 years imprisonment pursuant to the jury's recommendation. Defendant appeals from the judgment, presenting a single point relied on for decision. He contends that the trial court committed plain error by admitting hearsay testimony in violation of the confrontation clauses contained in the Sixth Amendment of the United States Constitution and Article I, § 18(a) of the Missouri Constitution of 1945. We affirm the trial court's judgment.

Defendant does not challenge the sufficiency of the evidence to support his conviction. We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Rush,* 949 S.W.2d 251, 252 (Mo.App.1997). So viewed, the evidence reveals the following facts.

In December 2000, Jill Wieneke ("Officer Wieneke") was a task force officer for the Lake Area Narcotics Enforcement Group ("LANEG"). LANEG is a multi-jurisdictional task force that is supervised by the Missouri State Highway Patrol. Officer Wieneke primarily worked undercover, buying narcotics and obtaining information.

---

1. All references to statutes are to RSMo 2000 unless otherwise indicated.

On December 18, 2000, Officer Wieneke was conducting an undercover narcotics investigation in Rolla, Missouri. At approximately 6:30 p.m., she went to the residence of a confidential informant, Tabitha Brinkley ("Brinkley"). Officer Wieneke was told by Brinkley that she knew the address of a person in Rolla to contact about buying narcotics.

Brinkley took Officer Wieneke to the residence of Sherry Watson ("Watson"), which was located at 1200 Arkansas in Rolla. Officer Wieneke and Brinkley arrived there around 8:00 p.m. and were invited into the living room of Watson's home. After introducing Officer Wieneke to Watson, Brinkley asked Watson if she had any cocaine. Watson replied that she did not have any, but she could make some telephone calls and contact someone that she knew would have some. In return, Watson wanted to be given a part of the narcotics that were purchased. After that discussion occurred, Watson started making telephone calls.

While Watson was making these calls, a black male came to the Watson home and knocked on the front door. After he entered the house, Brinkley introduced him to Officer Wieneke as "T." Officer Wieneke had not previously met this individual, but, by reviewing reports and photographs maintained by the Rolla Police Department, she later determined that his name was Terry Campbell.[2] At trial, Officer Wieneke identified Defendant for the jury as the person she met at Watson's home. She testified that there was no doubt in her mind Defendant was the person with whom she dealt on December 18, 2000.

After Defendant arrived, Brinkley asked him if he had any powder cocaine. He replied that he had only "rock," which meant crack cocaine. Brinkley said that

would do. Officer Wieneke, Brinkley, Watson and Defendant then moved to the kitchen area of Watson's home, which was located in the back of the residence, to discuss the transaction. Officer Wieneke had a brief conversation with Defendant about purchasing narcotics from him. He told Officer Wieneke that he could get crack or cocaine, and he could get more of it later if she wanted it. The price for the drugs was $125. Defendant, however, was unsure about whether he wanted to sell drugs to Officer Wieneke. She was wearing a loose sweatshirt which covered a large belt buckle on her pants. Defendant felt around Officer Wieneke's waistband and became concerned. She raised her sweatshirt above her waist to show him that what he felt was just her belt. He said that he was still a bit leery about the deal, so he left the kitchen and went to the front part of the residence. At this point, Watson became agitated because she was concerned the sale would not occur, thereby depriving her of a share of the drugs. Watson snatched the $125 in cash from Officer Wieneke's hands and took it to the front of the house. Watson returned in about one minute, and Officer Wieneke took the cash back from her. Defendant returned to the kitchen area and said that "everything was cool and we could do the deal." He offered to get more drugs if Officer Wieneke wanted them. She gave Defendant $125 in cash. Defendant laid five individually wrapped rocks of crack cocaine on top of a dresser so Officer Wieneke could examine them and check the weight. Each rock was fairly small, off-white to tan in color and individually packaged in the tied-off corner of a Zip–Lock bag. Officer Wieneke had previously seen this type of substance in her training and during her experience doing undercov-

2. Defendant also sometimes went by the name of Terry Harrell.

er narcotics work.[3] At that point, Watson came over and wanted her portion of the drugs. In order for Officer Wieneke to maintain her undercover status, she let Watson keep one of the rocks of crack cocaine for making telephone calls and allowing her residence to be used for the transaction. In Wieneke's presence, Watson dissolved the rock cocaine in some vinegar, drew the liquid into a syringe and injected herself with the solution.

Officer Wieneke always carried a locked briefcase to which only she had the combination. She placed the remaining four packages of crack cocaine in her briefcase and kept them there, undisturbed, until December 27, 2000. On that date, she put the bags of rock cocaine in a properly-labeled evidence bag and placed the bag in the locked Troop F Highway Patrol evidence box. On January 5, 2001, the evidence bag was moved from the evidence box to Troop F's evidence room and logged into its computerized evidence system. Thereafter, the four rocks contained in the evidence bag were analyzed by the Missouri State Highway Patrol Crime Lab, and a laboratory report containing the results of that analysis was generated. This lab report, which the Prosecuting Attorney and Defendant's attorney stipulated was admissible and conclusive on the issue, confirmed that the rocks were cocaine base, a controlled substance with a combined weight of .41 grams.[4] During the trial, the lab report was admitted in evidence as State's Exhibit 3 and passed to the jury for its examination.

Defendant presented no evidence at trial. At the close of the evidence, the jury found Defendant guilty as charged. At a subsequent hearing, he was sentenced by the trial court to the prison term noted above. Thereafter, Defendant filed a timely notice of appeal.

■ In Defendant's sole point relied on, he contends that the trial court committed plain error by admitting hearsay testimony during Officer Wieneke's testimony from Brinkley, Watson and an unnamed Rolla police officer. Defendant contends that the admission of this alleged hearsay testimony violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 18(a), of the Missouri Constitution. As Defendant forthrightly concedes in his brief, he neither objected to the admission of this testimony at trial nor complained about its admission in his motion for new trial. Consequently, this claim of trial court error is not preserved for appellate review. *State v. Kelley*, 953 S.W.2d 73, 86 (Mo.App. 1997). Defendant requests that we review for plain error review pursuant to Rule 30.20.[5]

■ At the outset, we note that Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved. "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. White*, 92 S.W.3d 183, 189 (Mo. App.2002). Rather, plain error is limited

---

**3.** During the two years Officer Wieneke was working as a narcotics officer, she was involved in about 100 to 125 undercover drug buys.

**4.** We take judicial notice that cocaine base is a Schedule II controlled substance pursuant to § 195.017.4(1)(d). *See State v. Bell*, 855

S.W.2d 493, 494 (Mo.App.1993); *State v. James*, 796 S.W.2d 398, 399 (Mo.App.1990).

**5.** All references to rules are to the Missouri Rules of Criminal Procedure (2003) unless otherwise indicated.

to "error that is evident, obvious and clear." *Id.* The proper parameters of plain error review are established by the text of Rule 30.20 itself. It states, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.* The extent of appellate review authorized by this rule is limited in two important respects. First, an appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's discretion. *State v. Thurston,* 104 S.W.3d 839, 841 (Mo.App. 2003); *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000). Second, as this Court observed in *State v. Deckard,* 18 S.W.3d 495 (Mo.App.2000):

> We initially observe that an assertion of plain error under Rule 30.20 places a much greater burden on a defendant than an assertion of prejudicial error. A defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected.

(Citations and footnote omitted.) *Id.* at 497. The burden of proving the existence of such a manifest injustice or miscarriage of justice rests on Defendant. *State v. Cole,* 844 S.W.2d 493, 500 (Mo.App.1992); *State v. Lewis,* 809 S.W.2d 878, 879 (Mo. App.1991). The determination of whether plain error exists must be based on a consideration of the individual facts and circumstances of each case. *State v. Robinson,* 44 S.W.3d 870, 872 (Mo.App.2001). In this direct appeal setting, we are mindful that plain error cannot serve as a basis for granting the Defendant a new trial, as he requests, unless the error was "outcome determinative." *Deck v. State,* 68 S.W.3d

418, 427 (Mo. banc 2002); *State v. Armentrout,* 8 S.W.3d 99, 110 (Mo. banc 1999). In the absence of an error of this magnitude, no manifest injustice or miscarriage of justice exists.

■ A request for plain error review triggers the commencement of a two-step analysis by an appellate court. *See State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App. 1999). The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *State v. Rhodes,* 988 S.W.2d 521, 526 (Mo. banc 1999); *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). If facially substantial grounds are found to exist, the appellate court should then move to the second step of this analysis and engage in plain error review to determine whether manifest injustice or a miscarriage of justice has actually occurred. *See State v. Rogers,* 51 S.W.3d 879, 880 (Mo.App.2001). If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.; State v. East,* 976 S.W.2d 507, 509–10 (Mo.App.1998).

■ Defendant's claim of plain error is predicated on the admission of alleged hearsay statements by Brinkley, Watson and an unnamed Rolla police officer that were made to Officer Wieneke and introduced in evidence through her trial testimony. With respect to statements made by Brinkley and Watson, it is not clear to us precisely which ones Defendant contends are inadmissible hearsay, in that the individual statements were not quoted anywhere in Defendant's brief. Based on the references in Defendant's brief to transcript pages where Defendant says these statements can be found, however, we have

included what we presume are the offending statements in our summary of the facts. Assuming *arguendo* that these statements were inadmissible hearsay, we conclude that the admission of this evidence fails to facially establish grounds for believing that a manifest injustice or miscarriage of justice might have occurred. To establish plain error due to the erroneous introduction of evidence, there must be apparent prejudice to the defendant. *State v. Fuente*, 871 S.W.2d 438, 443 (Mo. banc 1994). Prejudice is not considered apparent when there is ample other evidence to support the conviction. *Id.; State v. Jimmerson*, 891 S.W.2d 470, 472 (Mo.App.1994).

■ Here, Defendant was charged with one count of selling a controlled substance in violation of § 195.211. In order to find him guilty of that offense, Instruction No. 5 required the jury to find that: (1) on December 18, 2000, Defendant knowingly sold cocaine base, a controlled substance, to Officer Wieneke; and (2) Defendant knew the substance he sold was cocaine base, a controlled substance. Excluding any consideration of the alleged hearsay statements of Brinkley and Watson, we find that there was ample evidence introduced at trial to support the jury's findings on these two elements. Officer Wieneke's testimony that she purchased five rocks of crack cocaine from Defendant for $125 was based on personal knowledge and derived from her direct involvement in the transaction. Immediately after the sale occurred, Officer Wieneke also personally observed Watson take and use one of the rocks of crack cocaine obtained from Defendant. The laboratory report, which Defendant stipulated was "conclusive" on the issue, unequivocally confirmed that the substance Officer Wieneke purchased from Defendant was cocaine base, a controlled substance. Evidence that Defendant was

knowingly selling a controlled substance was unequivocally established both by his own conduct and his admissions. When Officer Wieneke first asked Defendant to sell narcotics to her, he was very reluctant to do so. He felt around the waistband of her pants and became concerned when he felt a large object under her sweatshirt. Even after Officer Wieneke showed Defendant that it was just a belt buckle, he still manifested nervousness about selling drugs to her. Similarly, Defendant's admissions, all of which were made in Officer Wieneke's presence, included the following: (1) his statement, upon first arriving at Watson's house, that the product he was selling was "rock," which meant crack cocaine; (2) his later statement that he could get crack and cocaine to sell to Officer Wieneke; (3) his statement that he was "leery" about doing the deal; and (4) his statement that "everything was cool and we could do the deal." These admissions, which were not hearsay, tended to incriminate Defendant, connect him to the crime charged, and manifest Defendant's consciousness of guilt. *State v. Brummall*, 51 S.W.3d 113, 119 (Mo.App.2001); *see State v. Wallingford*, 43 S.W.3d 852, 855 (Mo. App.2001). We find that Defendant's evidence of guilt was overwhelming, and his guilt was established independent of the alleged hearsay statements by Brinkley and Watson. Therefore, plain error review is not warranted. *See State v. Lewis*, 809 S.W.2d 878, 879 (Mo.App.1991); *State v. Meyers*, 770 S.W.2d 312, 315 (Mo.App. 1989).

■ Defendant also contends that the trial court committed plain error in permitting Officer Wieneke to testify about alleged hearsay statements made to her by an unnamed Rolla police officer. We discuss this contention separately because, despite what Defendant claims in his brief, this testimony was not adduced

by the State during Officer Wieneke's direct examination. Instead, it was Defendant's attorney who elicited the following testimony from Officer Wieneke on cross-examination:

Q. And, now, when you first met T that night, you didn't know who he was, and—how did you learn who T was?

A. I also spoke with the informant after the transaction to try to see if she knew any better or could give me any better maybe if she knew him. The controlling officer was a Rolla police officer who knew—has been a Rolla police officer for a number of years and knew several of the people in the area. And through incarcerations at the Rolla Police Department, reports at the Rolla Police Department, we were able to use them to make identity.

Q. Did you make a photocopy of that? Did you get a copy of that photograph?

A. Yes, I have a copy of one of the photographs.

Since Officer Wieneke gave this testimony in response to questions from Defendant's attorney, it cannot be the basis for overturning the judgment in this case. "No criminal trial or judgment should be affected, in any manner, by an error committed at the instance of the defendant." *State v. Williams*, 118 S.W.3d 308, 313 (Mo.App. 2003). *See also State v. Burgin*, 633 S.W.2d 124, 125 (Mo.App.1982) (an appellant is not entitled to complain about matters brought into the case by his own questions or take advantage of self-invited error); *State v. Reynolds*, 560 S.W.2d 313, 316 (Mo.App.1977) (an appellant may not be heard to charge prejudice on account of testimony produced by appellant's own counsel); § 545.030.1(16). Even if the State had adduced this testimony, however, our conclusion would be the same. The effect of this testimony was simply to clarify how Officer Wieneke learned Defendant's name. Assuming, once again, that this testimony was hearsay—an issue we do not decide—plain error review is not warranted because Officer Wieneke unequivocally identified Defendant in court as the man from whom she purchased crack cocaine. When she learned his name was immaterial. *See State v. Weston*, 926 S.W.2d 920, 922–23 (Mo.App. 1996).

After examining all of the facts and circumstances of this case, we conclude that Defendant has not met his burden of establishing facially substantial grounds for believing that a manifest injustice or miscarriage of justice might have occurred in his case. Therefore, we decline to exercise the discretion afforded us by Rule 30.20 to engage in plain error review. The judgment of the trial court is affirmed.

PARRISH, J., and RAHMEYER, C.J.—P.J., concur.