**STATE of Missouri, Respondent,**

v.

**Michael PENNELL, Appellant.**

**No. ED 97678.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 30, 2013.

Alexa Irene Pearson, Columbia, MO, for appellant.

Chris Koster, Jessica P. Meredith, Jefferson City, MO, for respondent.

ROY L. RICHTER, Judge.

Michael Pennell ("Defendant") appeals from the trial court's judgment, after a jury trial, convicting him of one count of the class B felony of distribution, delivery or sale of a controlled substance, in violation of Section 195.211, RSMo Cum.Supp. 2012.[1] Defendant was sentenced to fifteen years of imprisonment. We affirm.

## I. Background

Viewed in the light most favorable to the verdict, the jury was presented with the following evidence:

In the spring of 2010, the manager of a Pamida store, which housed a drop-off location for UPS, contacted Detective Michael Murphy of the Northeast Missouri Task Force because the manager believed that Jake Humphrey was dropping off packages related to drug activity. The Pamida manager found it suspicious that Mr. Humphrey was spending $60 to ship incense and catalogs overnight. Humphrey was shipping packages to Rhonda Stevenson in Kansas City, Kansas. Rhonda Stevenson and Defendant have four children together and live together in the house at the address to which the packages were being shipped.

---

1. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp.2012.

In May of 2010, Kansas City drug enforcement officers intercepted a suspicious package being sent to Mr. Humphrey at an address in Palmyra, Missouri. The return address on the package showed "Common Scents" with an address corresponding to the vacant lot next to the residence occupied by Ms. Stevenson and Defendant. Northeast Missouri Drug Task Force officers posed as UPS delivery men and attempted to deliver the package to Mr. Humphrey in Palmyra without success.

The undelivered package contained a Pampers box which held about 9 ounces of methamphetamine and 2 pounds of marijuana, intended for Mr. Humphrey.

Defendant later was arrested, waived his *Miranda* rights and admitted that he had been shipping drugs via UPS to Mr. Humphrey on numerous occasions.

Defendant offered no evidence at trial.

Additional facts will be discussed as they pertain to Defendant's points on appeal.

## II. Discussion

Defendant raises five points on appeal. In his first point, he claims the trial court clearly and plainly erred in denying his motion to suppress the police officers' testimony about his alleged statements, and in admitting this evidence at trial over objections, because this denied his rights to due process of law and against self-incrimination, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 19 of the Missouri Constitution. Specifically, Defendant contends he did not voluntarily or freely provide truthful statements after a knowing waiver of rights, and the officers' disputed testimony of his statements was the only evidence supporting his guilt, resulting in a manifest injustice or miscarriage of justice.

Second, Defendant alleges the trial court abused its discretion in admitting Defendant's out-of-court statements into evidence as substantive evidence of his guilt for distribution of a controlled substance, because this deprived him of his right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that there was no independent proof of the *corpus delecti* of the offense other than Defendant's own statement, which was unrecorded and contested. Defendant argues even if he had not challenged the accuracy of the officers' version of his unrecorded interrogation, Defendant's statements cannot be used as substantive evidence.

In his third point, Defendant alleges the trial court abused its discretion in overruling Defendant's objections to State's Exhibits 2, 3, and 4, a box containing controlled substances, because this denied Defendant his rights to due process of law and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that the State failed to prove that these items were in the same condition as when they were seized, because the State admittedly could not prove how these items ended up in the hands of the non-testifying officers who handed them off to Officer Hays, and nobody could explain who had opened and resealed the box, or whether any of the items within it had been tampered with, because the State failed to prove its origin.

In his fourth and fifth points, Defendant contends the trial court erred in overruling Defendant's objections to Instruction No. 5, the verdict director for distribution of a controlled substance, and in submitting this instruction to the jury, because this violated Defendant's rights to due process

of law and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that the instruction did not comply with Missouri Approved Instructions ("MAI") or the Notes on Use. Defendant argues in his fourth point that the State did not name or describe the person to whom drugs were allegedly delivered, nor did it name any specific date within the month-long charging period the crime was alleged to have occurred. Defendant argues that submitting the verdict director in this form prejudiced Defendant by substantially lowering the State's burden of proof on essential elements of this offense. In his fifth and final point, Defendant alleges the prosecutor argued Defendant had attempted to distribute methamphetamine, but the jury was not instructed to determine beyond a reasonable doubt if any alleged conduct was a substantial step toward the commission of the offense or whether Defendant engaged in any such conduct with the requisite purpose, because the instruction merely included a definition of "delivery" as including an attempt but contained no factual allegations, and submitting this instruction prejudiced Defendant because it eliminated the State's burden of proof on essential elements of the offense and so misdirected the jury that it seriously undermines confidence in the verdict.

A. *Point I: Defendant's Statements through Officers' Testimony were Admissible.*

First, Defendant claims the trial court plainly erred in denying his motion to suppress the officers' testimony about his alleged statements, and in admitting this evidence at trial over objections. Defendant argues that he did not freely or voluntarily provide truthful statements after a knowing waiver of rights, and the

officers' disputed testimony, of his statements was the only evidence supporting his guilt, resulting in a manifest injustice or miscarriage of justice.

A ruling on a motion to suppress is interlocutory, and does not preserve issues for appellate review. *State v. Roark*, 229 S.W.3d 216, 218–19 (Mo.App. W.D.2007). Defendant did not object to the officers' testimony about Defendant's statements to police when they were first presented at trial, and only included the court's error in denying the motion to suppress in the motion for a new trial.

*i. Standard of Review*

Generally, when reviewing a trial court's ruling on a motion to suppress, an appellate court reviews the case in the light most favorable to the ruling, disregarding any contrary evidence or adverse inferences. *State v. Waldrup*, 331 S.W.3d 668, 672 (Mo. banc 2011). "The inquiry is limited to determining if the decision is supported by substantial evidence, whether that evidence is presented at the suppression hearing itself or during trial." *Id.* A "trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous." *Id.* This Court defers to the trial court's credibility determinations and factual findings. *State v. Nylon*, 311 S.W.3d 869, 884 (Mo.App. E.D.2010).

However, because Defendant has not properly preserved this point, we undergo an analysis for plain error. Rule 30.20; *Nylon*, 311 S.W.3d at 884. A request for plain error review triggers the commencement of a two-step analysis by an appellate court. *State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App. S.D.2004). The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial

grounds are found to exist, the appellate court should secondly engage in plain error review to determine whether manifest injustice or a miscarriage of justice has actually occurred. *Id.* If facially substantial grounds are not found to exist, however, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.* To find manifest injustice, this Court must find that the trial court's error in admitting the evidence was outcome determinative. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006).

### ii. Analysis

*Miranda v. Arizona* requires that a person must be adequately and effectively apprised of his rights, and those rights must be fully honored by officers. 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The person must be informed in clear and unequivocal terms that he has the right to remain silent, and he must be clearly informed that he has the right to consult with a lawyer and have the lawyer present during interrogation. *Id.* at 467–68, 471, 86 S.Ct. 1602. To admit a suspect's statement, the state may show either an express or "implicit" waiver of the *Miranda* right to remain silent. *Berghuis v. Thompkins*, 560 U.S. 370, 130 S.Ct. 2250, 2261, 176 L.Ed.2d 1098 (2010) (citing *North Carolina v. Butler*, 441 U.S. 369, 376, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). "If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him." *Davis v. United States*, 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (citing *Butler*, 441 U.S. at 372–76, 99 S.Ct. 1755). Giving the *Miranda* warnings and getting a waiver has "generally produced a virtual ticket of admissibility[.]" *Missouri v. Seibert*, 542 U.S. 600, 608–09, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

██ Moreover, in determining whether a statement was voluntarily made, "the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." *Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). It is "highly probative" that a suspect "chooses to speak after being informed of his rights[.]" *Id.* "The test for voluntariness is whether, under the totality of the circumstances, the defendant was deprived of free choice to admit, to deny, or to refuse to answer and whether physical or psychological coercion was of such a degree that the defendant's will was overborne at the time he confessed." *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998) (citations omitted). Missouri courts consider the following nonexclusive list of factors in addition to whether the defendant was advised of his Miranda rights and understood them: "the defendant's physical and mental state, the length of questioning, the presence of police coercion or intimidation, and the withholding of food, water, or other physical needs." *Id.*

██ Neither the Missouri Constitution nor the United States Constitution requires that law enforcement electronically document custodial interrogations. *See State v. Blair*, 298 S.W.3d 38, 50–52 (Mo. App. W.D.2009). However, the trial court has a superior opportunity to determine the credibility of witnesses; thus, the Court defers to the trial court's credibility determinations and factual findings. *Nylon*, 311 S.W.3d at 884.

Denying Defendant's motion to suppress, here, the trial court found:

> [Defendant's] statements were made voluntarily and not the result of mental or physical coercion, duress, or threats. In addition, the Court finds the statements

were not made through trickery or obtained through promises or false pretenses. The Court further finds the Defendant knowingly and voluntarily waived his right to counsel, and that the statements were not the fruit of an illegal arrest.

Here, the trial court found Lt. Patti Talbert's testimony credible that she read Defendant his *Miranda* rights and he stated that he understood. Defendant then expressly waived his rights when he initialed each line and signed and dated the *Miranda* Rights Waiver form. The trial court also found credible the testimony that Defendant did not ask for a lawyer at any time, rather than Defendant's own testimony that he had. The court found the officers' testimony credible that Defendant's statements were not made in the form of a hypothetical, nor could the officers recall that he used the term "hypothetical" at all.

In accordance with these credibility determinations, Defendant did not appear to be under the influence of drugs at the time of questioning, according to Lt. Talbert. Lt. Talbert testified that she did not threaten Defendant, his family, or subject him to duress of any kind. She did not use physical or mental coercion, trickery, or false promises to obtain Defendant's waiver. The officers interviewing Defendant were unarmed and out of uniform at the time. Simply because the officers told Defendant they had evidence against his wife does not demonstrate that the officers forced Defendant to make a statement that was not voluntary. *See State v. Edwards*, 116 S.W.3d 511, 530–31 (Mo. banc 2003) ("While defendant's desire to avoid the need for [his family] to come back to the police station … is understandable, it does not make his subsequent confession the product of coercion.").

After Defendant waived his *Miranda* rights, he agreed to talk to Lt. Talbert, even though he did not want to provide a written statement. The interview was not recorded, and the officers testified they did not have audio recorders during the interview and it was not their policy to record interviews. Det. Michael Murphy said that Lt. Talbert took very detailed notes, and that the interview report based on her notes was an accurate depiction of Defendant's statements. Defendant then admitted that he had been delivering drugs, by UPS, to Jake Humphrey on numerous occasions.

The trial court did not plainly err or make a ruling that was clearly erroneous in overruling Defendant's motion to suppress the officers' testimony about Defendant's statements because Defendant voluntarily provided the statements after a knowing waiver of his rights. Point I is denied.

## B. Point II: Requirements of Corpus Delecti were Met.

■ Next, Defendant argues that the trial court plainly erred and abused its discretion in admitting Defendant's out-of-court statements as substantive evidence of his guilt for distribution of a controlled substance, because there was no independent proof of the *corpus delecti* of the offense other than Defendant's own statement, which was unrecorded and contested. Defendant argues even if he had not challenged the accuracy of the officers' version of his unrecorded interrogation, Defendant's statements cannot be used as substantive evidence.

Defendant failed to raise this argument in moving to suppress his statements, and failed to make this objection to the officers' testimony about Defendant's statements at trial. Again, because this point is not preserved for appellate review, we review it

only for plain error. *State v. Davis*, 348 S.W.3d 768, 770 (Mo. banc 2011).

 The rule of *corpus delecti* bars the admission of extrajudicial confessions by a defendant absent independent proof of the commission of an offense. *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). *Corpus delecti* prevents the admission of confessions where there is an absence of even slight facts tending to support the confession. *Id.* The existence of independent facts tending to establish the defendant's guilt are not required to be presented prior to the admission of evidence of the defendant's confession to the underlying crime. *Id.* "[I]f a confession is made which permits the State to discover corroborating evidence of the particular crime confessed, the corroborating evidence does not need to be sufficient, independent of the confession, to establish complete proof that the crime had been committed." *State v. Warren*, 141 S.W.3d 478, 490 (Mo.App. E.D.2004). Moreover, "[i]f there is evidence of corroborating circumstances independent of the confession, which tends to prove the offense by confirming matters related in the confession, both the corroborating circumstances and the confession may be considered in determining whether or not the *corpus delecti* has been established." *State v. Sardeson*, 220 S.W.3d 458, 470–71 (Mo.App. S.D. 2007). The corroborating evidence may be circumstantial, and if so, the circumstances and facts establishing guilt must be consistent with each other and consistent with the hypothesis of guilt. *State v. Fears*, 803 S.W.2d 605, 608 (Mo. banc 1991). The circumstances need not be absolutely conclusive of guilt or demonstrate the impossibility of innocence, and the mere existence of other possible hypotheses is not sufficient to remove the case from the jury. *Warren*, 141 S.W.3d at 490.

Here, just as the State suggested, there is plenty of evidence besides Defendant's confession, even if it was circumstantial. The circumstances were such that Jake Humphrey was reportedly receiving drugs from a supplier in Kansas City, and that Mr. Humphrey was shipping suspicious packages related to drug activity, including two packages to Rhonda Stevenson at 3011 Hiawatha in Kansas City. Defendant also lived at that address with Ms. Stevenson, with whom he had four children and he referred to her as his wife. Further, there was a vacant lot next to their address, from which address packages were sent to Mr. Humphrey. One of the intercepted packages contained almost 7 ounces of methamphetamine and 2 or 2.2 pounds of marijuana.

Further circumstances also point to Defendant's involvement in the delivery of controlled substances. Annette Garrett was arrested in Quincy, Illinois for "delivering a large amount of methamphetamine to another individual, and she told police officers that she was delivering it for [Defendant]." She also told police where to find drugs that Defendant had left in her home.

All of the information given by Defendant in his statement was consistent with and corroborated the circumstantial evidence above. Defendant admitted that he had been delivering drugs by UPS to Jake Humphrey, and that he was receiving packages of money from Humphrey. Defendant said he lived with Ms. Stevenson, whom he called his wife and mother of his children. Defendant told police that Ms. Stevenson was not involved in the drug activity, but that they "just used her name for shipping purposes." Defendant stated he used the empty lot next to his house as a return address for his shipments. He said he had shipped other, legal things to Mr. Humphrey, and in so doing, he used

his real name, address, and company name, "Tawheed Fragrances." Defendant admitted he used a Pampers box to ship approximately 9 ounces of methamphetamine and 2 pounds of marijuana, which were very close to the amounts of both drugs found in the intercepted package. Defendant told police he knew there was a problem with the shipment because it did not arrive on schedule and Defendant was on the phone with Mr. Humphrey when officers attempted to deliver the package.

Defendant's confession was made four months after the other evidence was obtained. Even if the other evidence was independently insufficient to prove Defendant's guilt, that, together with the confession corroborating such evidence, was consistent with the State's hypothesis of Defendant's guilt. Under these circumstances, Defendant's claim of plain error does not facially establish substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. We decline to exercise our discretion to review the claim of plain error pursuant to Rule 30.20. Point II is denied.

## C. Point III: State's Exhibits were Admissible.

■■■ Third, Defendant alleges the trial court abused its discretion in overruling Defendant's objections to State's Exhibits 2, 3 and 4 because the State failed to prove these items were in the same condition as when they were seized or their origin.

### i. Standard of Review

■■■ The determination of whether a sufficient chain of custody has been established for the admission of an exhibit is a matter within the sound discretion of the trial court. *State v. Bowman,* 337 S.W.3d 679, 689 (Mo. banc 2011). An abuse of discretion occurs when the court's ruling is "clearly against the logic of the circumstances and is so unreasonable as to indi-

cate a lack of careful consideration." *State v. Winfrey,* 337 S.W.3d 1, 5 (Mo. banc 2011). This Court reviews the trial court's evidentiary rulings for prejudice, reversing only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Gaines,* 316 S.W.3d 440, 447 (Mo. App. W.D.2010).

### ii. Analysis

■■■ The trial court must be satisfied as to the identity of the exhibits and that the exhibits were in the same condition when tested as when the exhibits were originally obtained. *Bowman,* 337 S.W.3d at 689. This may be proven by evidence establishing a chain of custody, but proof of a chain of custody does not require proof of hand-to-hand custody of the evidence or proof that eliminates all possibility that the evidence has been disturbed. *Id.* The trial court may assume, absent a showing of bad faith or tampering, that officials having custody of exhibits properly discharged their duties and that no tampering occurred. *Id.* However, when an exhibit is identified positively at trial, chain of custody evidence no longer is required to prove that an item produced at trial is the item taken into custody as evidence. *Id.* Any weakness in a witness's visual identification is a proper subject of cross-examination and may be considered by the jury in assessing the weight of the evidence. *Id.*

Defendant argues the trial court should have sustained Defendant's objections to the challenged evidence because the State admitted it could not present any proof about the origin of the items or how they ended up in the hands of the seizing officers.

Here, Det. Joe Hays testified that he met two Kansas City drug enforcement officers in Brookfield on May 11, 2010, because they wanted Det. Hays to attempt

a controlled delivery of an intercepted package in Palmyra, Missouri. Det. Hays identified the package as State's Exhibit 2. He stated it was closed and did not have evidence tape on it; any sign of police control would have foiled the plan for a controlled delivery. Det. Hays did not open the package but secured it in his office. The next morning, Det. Bouyae and Chief Deputy Rob Powers attempted to deliver the package to Jake Humphrey, but after two failed attempts, turned the evidence over to Lt. Talbert.

Lt. Talbert testified she recognized the State's Exhibit 3, the methamphetamine taken from the Pampers box, by her signature at the top of the red seal. She was present at the task force office when the Pampers box was opened and the methamphetamine was taken from it, after the failed delivery occurred. Special Agent Dean Duke and Det. Murphy were also present with Lt. Talbert. Lt. Talbert testified she was present when Special Agent Duke opened the box and removed the methamphetamine from the clear plastic baggies in a plastic container, they photographed it, and then packaged it in the big plastic container and they both signed the seal. Special Agent Duke sent the exhibits to be analyzed at the crime lab in Chicago.

Det. Murphy, with the Northeast Missouri Task Force, testified that he recognized State's Exhibit 2 as well. Det. Murphy, who arrested Defendant and participated in interviewing him with Lt. Talbert, testified that Defendant admitted that he had sent methamphetamine and marijuana to Jake Humphrey using that particular Pampers box, marked as State's Exhibit 2 at trial. Defendant further told officers he believed he had shipped approximately 9 ounces of methamphetamine and 2 pounds of marijuana. The box was shipped to Jake Humphrey

at 210 A West Olive Street, Palmyra, Missouri. Its return address label stated Common Scents at 3009 Hiawatha, Kansas City, Kansas, which was the vacant lot next door to Defendant's home.

Edward Erisman, a forensic chemist at the DEA, testified that he tested State's Exhibit 3, which he recognized by his seal and signature. He said it had not been tampered with since he sealed it. Following the testing, DEA Special Agent Robert Hanson testified that he then received the exhibits for trial, the drug evidence custodian took custody of them and then turned them over to Agent Hanson, who transported them to Lt. Talbert for trial.

Here, in admitting the exhibits as evidence, the trial court heard testimony on the record that established a chain of custody from the time the Kansas City drug enforcement officers intercepted the package, up to the time the exhibits were presented at trial. Although Det. Hays did not know from where the Kansas City officers obtained the package, a gap in the chain of custody goes to the weight of the evidence offered, not its admissibility. *See* *State v. Reed*, 811 S.W.2d 50, 55 (Mo.App. S.D.1991). The State was not required to provide evidence eliminating all possibility that the evidence had been disturbed, and the trial court also was allowed to assume that officials with custody of the exhibits properly discharged their duties and that no tampering occurred. *Bowman*, 337 S.W.3d at 689. No evidence was presented that the officers carried out their duties in bad faith or tampered with the evidence in any way. Additionally, Defendant positively identified the exhibit during his interview with police. "Any weakness[ ] in a witness's visual identification is a proper subject of cross-examination and may be considered by the jury in assessing the weight of the evidence." *Id.*

The trial court's ruling in admitting the evidence was not "clearly against the logic of the circumstances" or "so unreasonable as to indicate a lack of careful consideration." The trial court did not abuse its discretion. Defendant's third point is denied.

#### D. Points IV and V: No error in submitting Verdict Director for Distribution.

In Defendant's fourth and fifth points, he argues the trial court erred in overruling Defendant's objections and submitting to the jury Instruction No. 5, the verdict director for distribution of a controlled substance. Defendant argues the instruction did not comply with the MAI or Notes on Use, the State did not name or describe the person to whom drugs were allegedly delivered, nor did it name any specific date within the month-long charging period it was alleged to have occurred. Defendant also alleges the prosecutor argued that Defendant had attempted to distribute methamphetamine, but the jury was not instructed to determine beyond a reasonable doubt if any alleged conduct was a substantial step toward the commission of the offense or whether Defendant engaged in any such conduct with the requisite purpose, and that the instruction merely included a definition of "delivery" that provided it included an attempt but contained no factual allegations. Defendant contends he was prejudiced in that the instructional error substantially lowered the State's burden of proof on essential elements of the offense.

#### i. Standard of Review

The Court reviews a claim of instructional error *de novo*, evaluating whether the instruction was supported by the evidence and the law. *Powderly v. South Cnty. Anesthesia Assoc., Ltd.*, 245 S.W.3d 267, 276 (Mo.App. E.D.2008). If a jury instruction does not follow an applicable MAI, "[s]uch errors are presumed to prejudice the defendant unless it is clearly established . . . that the error did not result in prejudice." *State v. Westfall* 75 S.W.3d 278, 284 (Mo. banc 2002). The mandatory requirement for use of an MAI does not, however, prevent modification of an MAI instruction. *Rice v. Bol*, 116 S.W.3d 599, 606 (Mo.App. W.D.2003). Modification of an MAI is specifically provided in Rule 70.02(b): "Where an MAI must be modified to fairly submit the issues in a particular case . . . then such modifications . . . shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b). A modified MAI should follow the substantive law and be readily understood by the jury. *Smith v. Kovac*, 927 S.W.2d 493, 497 (Mo.App. E.D.1996). Where there is no applicable MAI, the instruction will be reviewed to determine "whether the jury [could] understand the instruction and whether the instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict." *First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 219 (Mo. banc 2012). "If this Court finds that the instruction is erroneous, it must then determine whether the error misdirected, misled or confused the jury, resulting in prejudicial error and justifying the grant of a new trial." *Id.*

#### ii. Analysis

The applicable verdict director to Section 195.211 is MAI–CR3d 325.04.

During the instruction conference, the State presented the verdict director based on MAI–CR3d 325.04.1[2], and Defendant objected that May 2010 was a "broad time-

---

**2.** The MAI–CR3d 325.04.1 instruction for Controlled Substances: Distribution, Delivery

frame, making it more difficult to defend against." Further, Defendant argued that the instruction failed to comply with the MAI because it did not include the name of the person to whom the controlled substance was delivered. The State argued that the instruction complied with case law, and the police reports provided to Defendant indicated when in May the incident occurred. The trial court overruled the objection and it was submitted as Instruction No. 5. The verdict director as submitted read as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about May, 2010, in the Township of Liberty, County of Marion, State of Missouri, the defendant knowingly delivered methamphetamine, a controlled substance, to a person, and

Second, that defendant knew that the substance he delivered was methamphetamine, a controlled substance,

Then you will find the defendant guilty of delivered [sic] a controlled substance.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, controlled substance includes methamphetamine.

Delivered means the actual, constructive, or attempted transfer from one person to another of controlled substance, whether or not there is an agency relationship, and includes a sale.

During trial, the State began its closing argument with the following statement to the jury:

Ladies and gentlemen, as I told you, when we started this case yesterday, in May of 2010, [Defendant] attempted to transfer 225 grams of methamphetamine, about 6 ounces, to Jake Humphrey here in Palmyra by shipping it with UPS.

Throughout trial the State presented evidence that Defendant delivered methamphetamine to Jake Humphrey, and repeatedly referred to Mr. Humphrey by name. The State also summarized: "[Defendant] confessed to transferring the drugs to Jake Humphrey for money. He's a drug dealer. He sells drugs into your community."

Defendant argued in closing that the State failed to state Jake Humphrey's name in Instruction No. 5 and that there was no evidence that Jake Humphrey got anything delivered.

 Where an alibi is not a valid defense, imprecision in identifying the time or date of the alleged offense does not "place such a burden on the defendant's ability to defend himself that fundamental fairness and due process require greater specificity." *State v. Ellis*, 820 S.W.2d

---

of Sale, reads as follows:

(As to Count ____, if)(If) you find and believe from the evidence beyond at reasonable doubt:

First, that (on) (on or about) [date], in the (City) (County) of ____, State of Missouri, the defendant knowingly (distributed) (delivered) (sold) ( [name of controlled substance] ) (more than 5 grams of marijuana), a controlled substance, to [name of person or otherwise describe], and

Second, that defendant (knew) (or) (was aware) that the substance he (distributed) (delivered) (sold) was ( [name of controlled substance] ) (a controlled substance),

then you will find the defendant guilty (under Count ____) of (distributing) (delivering) (selling) (a controlled substance) (more than 5 grams of marijuana).

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

699, 701 (Mo.App. E.D.1991). Upon our review, we find the trial court sufficiently provided the jury with the May 2010 date as the MAI requires. MAI–CR3d 325.04.1. The exact date in May 2010 was not an essential element of the charged offense, and moreover, could not be pinpointed precisely, given the UPS shipping method and the interception and officers' attempted delivery on two separate dates. None of the evidence at trial suggested Defendant's charged offense took place at any time other than May 2010, nor did an alibi exist for that time period.

■ We further find that the use of the term "a person" rather than Humphrey's name was not prejudicial because it did not lower the State's burden of proof on the essential elements of the offense. The identity of the person to whom a drug sale is made is not an essential element of the offense. *State v. Taylor,* 375 S.W.2d 58, 63 (Mo.1964); *State v. Burns,* 795 S.W.2d 527, 529 (Mo.App. W.D.1990). Nevertheless, it was clear from the evidence and argument that Jake Humphrey was the only "person" to whom Defendant allegedly delivered methamphetamine. We find that the State has overcome the presumption of prejudice and has demonstrated that the jury could understand the instruction, which follows applicable law and in no way misdirected, misled, or confused the jury based on the evidence and the arguments presented. No prejudicial error resulted here.

■ In addition to the above arguments, Defendant also argues on appeal that the trial court erred in submitting the same instruction because of its use of the definition of "delivered," which includes "attempted transfer . . . ." This argument is not preserved for appeal. Nevertheless, in reviewing it for plain error, we find none.

MAI–CR3d 325.04.1 Notes on Use states that "[t]he following terms, if used in the instruction, may be defined by the Court on its own motion and must be defined upon written request in proper form by the state or by the defendant: 'controlled substance,' 'delivered,' . . ." Section 195.211.1 makes it "unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." The definitions contained in Section 195.010, providing guidance for words and phrases as used in Sections 195.005 to 195.425, define "deliver" or "delivery" as "the actual, constructive, or attempted transfer from one person to another of drug paraphernalia or of a controlled substance, or an imitation controlled substance, whether or not there is an agency relationship, and includes a sale." Section 195.010(8). Furthermore, the State argued in its closing argument that Defendant committed delivery even if he was not present in Marion County in May 2010 because "delivered" includes the attempted transfer from one person to another, and specifically, putting the controlled substance in the mail with UPS, which is what happened in this case. Nothing in the State's proffered verdict director, submitted by the trial court to the jury as Instruction No. 5, facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred.

Defendant's fourth and fifth points are denied.

### III. Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., P.J., and ANGELA T. QUIGLESS, J., concur.