

# Missouri Court of Appeals
## Southern District
### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD35936 |
| | ) | |
| LARRY A. SINOR, | ) | FILED: January 17, 2020 |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Jerry A. Harmison, Jr., Judge

## AFFIRMED

Larry A. Sinor ("Defendant") appeals his conviction, following a two-day jury trial, for the class A misdemeanor of careless and imprudent driving in violation of section 304.012, RSMo. (2000).[1] Defendant asserts six points on appeal all requesting plain error review of the trial court's failure to *sua sponte* intervene to strike and exclude from evidence certain selected parts of the testimony given by the State's expert witness, Trooper Bonnie Talik. We deny those requests, decline to engage in plain error review, and affirm the trial court's judgment of conviction.

---

[1] Defendant was sentenced to serve 180 days in the county jail. The trial court suspended execution of the sentence and placed Defendant on two years of unsupervised probation with the condition that he serve four days of shock time in the county jail.

1

## Factual and Procedural Background

On June 20, 2016, the semi-tractor driven by Defendant at 56 or 57 miles per hour in an eastward direction in the right lane of Route OO collided with the rear of a hay rake being pulled by a farm tractor that was traveling in the same direction in the same lane at a top speed of 16 or 17 miles per hour. The driver of the farm tractor died as a result of the collision.

By information, the State charged Defendant with the class A misdemeanor of careless and imprudent driving alleging that Defendant

> operated a motor vehicle on a public highway known as Route OO, in a careless and imprudent manner by failing to keep a proper lookout and overtaking and striking a slower moving vehicle, and thereby endangered the property of another or the life and limb of any person and was at that time involved in an accident.

The State endorsed on the information, as a witness, Bonnie Talik of the Major Crash Investigation Unit of the Missouri State Highway Patrol, who was the lead investigator of the collision. Defendant took Trooper Talik's deposition before trial. Also before trial, Defendant endorsed and gave notice of his intent to call Dr. Bruce A. Kater, Neuro-Optometrist, as an expert witness. The State took Dr. Kater's pre-trial deposition.

At trial, Defendant was represented by public defenders Sarah Johnson and Rodney Hackathorn. During Defendant's opening statement, trial counsel Johnson described for the jury the anticipated battle of experts related to the "lookout" kept by Defendant in the following manner:

> You will hear testimony from Missouri Highway Patrol accident reconstructionist [Talik] that, according to her mathematical calculations, [Defendant] should have been able to stop his semi in time to avoid the collision. However, you will also hear that these mathematical calculations are not exact. They are based on a guess as to what speed the tractor was actually going. You will hear that without that critical piece of information, no one can definitively say at what point the tractor entered the road in front of [Defendant]. You will also hear that, without knowing the tractor's speed, there's no way to calculate how quickly [Defendant's] semi reached the tractor.

So could there have been something else going on?  Well, you'll hear from Dr. Bruce Kater, our neuro optometrist from Mercy Hospital, that there's a phenomenon called the looming effect; or, as the Federal Aviation Administration calls it, a blossom effect.  You will hear Dr. Kater explain that this phenomenon is based on how quickly an image expands on the retina, or the nerve portion on the back of the eye.  You will hear that this phenomenon occurs when two objects are closing in, whether head on or from behind, and that it affects the -- the brain's ability to recognize you're on a collision course.  You will hear testimony that the FAA calls this the blossom effect, because the approaching image goes from an imperceptible increase in size to an explosion in the field of vision.  You will hear testimony that at that critical point, the brain must process the visual information, formulate a plan, and put it into motion.  Failure at any level leads to disaster, and seconds count.

The trial transcript indicates that a substantial portion of the testimony came from Trooper Talik and Dr. Kater.  Of the 193 pages of trial testimony in the transcript, Trooper Talik's testimony covered 81 pages (46 for direct and 35 for cross-examination) and Dr. Kater's testimony covered 76 pages (59 for direct and 17 for cross-examination).  Neither of Defendant's trial counsels made an objection to any of Trooper Talik's testimony.

A substantial portion of Defendant's closing argument, made by trial counsel Johnson, attacked various factual underpinnings of Trooper Talik's testimony, promoted the accuracy of Dr. Kater's testimony as to the "looming effect and perception-reaction times," and criticized Trooper Talik's testimony for not taking those into account.  In addition, trial counsel compared and contrasted the credentials of Trooper Talik and Dr. Kater emphasizing the deficiencies of the former and superior qualities of the latter.

After deliberating for 24 minutes, the jury returned a guilty verdict.  Defendant filed a motion for new trial, but no claim of trial court error was raised in that motion as to any part of Trooper Talik's testimony.  Defendant was subsequently sentenced by the trial court and this appeal timely followed.

**Discussion**

Defendant concedes that none of his six claims of trial court error were preserved for appellate review by a timely and proper objection and inclusion in Defendant's motion for new trial. Rather, Defendant requests Rule 30.20 plain error review of the trial court's failure to *sua sponte* intervene to strike and exclude from evidence five different conclusions testified to by Trooper Talik and, in his sixth point relied on, "the cumulative prejudicial effect" from the errors challenged in the other five points relied on.[2] Defendant claims that he was denied his right to a fair trial because each challenged conclusion testified to by Trooper Talik "invaded the province of the jury."

The State responds that Defendant has waived any plain error review because his trial counsels affirmatively acted in a manner precluding a finding that their failure to object was a product of inadvertence or negligence, but rather was the product of their trial strategy. The State relies upon *State v. D.W.N.*, 290 S.W.3d 814, 825 (Mo.App. 2009) for the propositions that a trial court does not plainly err "when it fails to *sua sponte* prohibit the introduction of objectionable evidence when the totality of the surrounding circumstances reflect[s] a clear indication that trial counsel strategically chose not to object to the evidence[,]" and that if counsel chooses not to object "but instead to exploit the alleged deficiencies at trial, appellant may not now be heard to complain of a chosen trial strategy." *Id.* (internal quotation marks omitted).

In his reply brief, Defendant does not assert or demonstrate that his trial counsels had no reasonable trial strategy not to object to the challenged testimony, but rather, simply contends that "[t]he State's argument that [Defendant] did not [object] to Trooper Talik's conclusions

---

[2] All rule references are to Missouri Court Rules (2019).

because of trial strategy *was not supported by the record*." (Emphasis added.) Defendant's technical position as to the limited status of the trial record illustrates the dilemma this court confronts when a Defendant, who was represented by counsel at trial, requests plain error review on appeal for unpreserved alleged error.

"Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved." ***State v. Campbell***, 122 S.W.3d 736, 739 (Mo.App. 2004). "[A]n appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's discretion." ***Id.*** at 740. "The court may simply decline to exercise its discretionary authority to review the point for plain error." ***Shifkowski v. State***, 136 S.W.3d 588, 590 (Mo.App. 2004).[3]

If we exercise our discretion and engage in the requested plain error review of unpreserved error, a "defendant must show not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice." ***State v. Stuckley***, 573 S.W.3d 766, 768 (Mo.App. 2019).

A defendant's attempt to show that the trial court committed evident, obvious, and clear error where the defendant was represented by counsel at trial, however, also necessarily implicates that trial counsel's failure to timely and properly object to such error. In other words, if the alleged error should have been evident, obvious, and clear to the trial court, it also should have been evident, obvious, and clear to trial counsel. Trial counsel's then timely and proper objection bringing such error to the trial court's attention would have allowed the trial court to immediately address and resolve the alleged issue and the defendant's objection. If the trial

---

[3] In the absence of a request, we may, nevertheless, *sua sponte* engage in plain error review where we find a manifest injustice or miscarriage of justice. *See, e.g.*, ***State v. Kimes***, 234 S.W.3d 584, 590 (Mo.App. 2007) (*sua sponte* found plain error in trial court's imposition of jail sentence for infraction where only authorized punishment was a fine).

5

court committed error in resolving either, that error would have been preserved for review for ordinary prejudice, thereby, making plain error review unnecessary. While only one alleged trial error is at issue, the two actors involved—the trial court and the defendant's trial counsel—implicate two different reviews.

Rule 30.20 plain error review in a direct appeal of a criminal conviction is focused upon the trial court's failure to respond to and address the alleged trial court error. A subsequent Rule 29.15 post-conviction review, however, is focused upon trial counsel's failure to object to that alleged error. *See* Rule 29.15(a). Although each has a different focus, they are related in several respects when the same alleged trial error is at issue in each. First, in the former, the question is whether the trial court plainly erred in not *sua sponte* intervening in response to that issue and, in the latter, the question is whether trial counsel was ineffective in not raising an objection to that issue.

Second, in ***Deck v. State***, 68 S.W.3d 418, 425-29 (Mo. banc 2002), our Supreme Court compared the Rule 30.20 plain error relief "outcome determinative" standard with the Rule 29.15 post-conviction relief "reasonable probability result would have been different" standard and held that, even though closely related, they are not equivalent. The former is more stringent than the "somewhat lower" latter such that "there are a small number of cases in which the application of the two tests will produce different results." ***Id***. at 427-28. As illustrated in ***Deck***, even though no "outcome determinative" plain error was found on direct appeal in the submission of erroneous jury instructions, ***id.*** at 424, the "reasonable probability result would have been different" post-conviction relief standard was met by trial counsel's ineffective failure to object to the submission of those instructions to the jury, ***id.*** at 429-31.

Plain error review and post-conviction review for ineffective assistance of trial counsel are also related in a third respect—trial counsel's reasonable tactical and strategic trial decisions defeat both. "Defendant 'cannot seek plain error review arising from failed tactical and strategic decisions made at trial.'" *State v. Evans*, 517 S.W.3d 528, 549 (Mo.App. 2015) (quoting *State v. Turner*, 242 S.W.3d 770, 779 (Mo.App.2008)). Likewise, "'[r]easonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.'" *Barton v. State*, 432 S.W.3d 741, 749 (Mo. banc 2014) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)).

The application of this shared principle, however, differs in the context of each. When considered on direct appeal, a trial court does not commit plain error for failing to take action *when the record clearly indicates* that the defendant's counsel strategically allowed that action. *See D.W.N.*, 290 S.W.3d at 817-27 (Mo.App. 2009) (no plain error for failing to prohibit testimony when the record showed defendant's counsel strategically chose not to object and allowed the evidence to be admitted). A trial record on direct appeal, however, is not developed for the purpose of considering and evaluating trial counsel's motivation in failing to object and, therefore, may not include all relevant evidence on that issue and may shed little, if any, light on that issue. On the other hand, in addition to the trial record, the Rule 29.15 motion court has available to it an expanded record generated in that proceeding specifically developed for the purpose of determining trial counsel's motivation in failing to object, which includes consideration as to whether that failure was in accordance with trial counsel's execution of a reasonable trial strategy. *See* Rule 29.15(i) (court may order on-the-record hearing on claims). This expanded record affords the Rule 29.15 motion court a more complete evidentiary picture and, therefore, a better opportunity to appropriately focus upon, consider and evaluate trial

7

counsel's inaction and his or her motivation for such inaction. *See, e.g.*, **Sanders v. State**, 564 S.W.3d 380 (Mo.App. 2018).

Fourth, the results of a successful appeal pursuant to Rule 30.20 and of a successful Rule 29.15 motion "are the same: the court vacates the judgment of [a defendant's] conviction and remands [the] case for a new trial." **D.W.N.**, 290 S.W.3d at 826. Because of the "somewhat lower" standard for Rule 29.15 relief, *see* **Deck**, 68 S.W.3d at 427-28, as discussed, *supra*, however, if counsel's failure to object was not the product of executing a reasonable trial strategy, a defendant is somewhat more likely to achieve this result in a subsequent Rule 29.15 proceeding than by Rule 30.20 plain error review on direct appeal.

Here, having reviewed and considered the record on appeal, the parties briefs, the alleged trial errors for which plain error review is requested and their integral involvement with trial counsel's failure to object, and the related nature of Rule 30.20 plain error review and Rule 29.15 review for ineffective assistance of counsel, we deny Defendant's requests for plain error review and decline to exercise our discretionary authority to review Defendant's six points for plain error.

## Decision

The trial court's judgment is affirmed.


GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS IN RESULT, IN SEPARATE OPINION

WILLIAM W. FRANCIS, JR., J. – CONCURS

8



# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
        Plaintiff-Respondent, )
)
  v. )  No. SD35936
)
LARRY A. SINOR, )  Filed: January 17, 2020
)
        Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Jerry A. Harmison, Jr., Judge

**CONCURS IN RESULT**

I concur in the result. There was no trial court error in failing to sua sponte intervene in the trial.

Nancy Steffen Rahmeyer, J. – Concurring Opinion Author